FIRST NATIONAL BANK OF UTICA v. RAMM.

1. MORTGAGES—MERGER OF ESTATES—INTENT.
    Generally, when holder of real estate mortgage becomes owner of fee, former estate is merged in latter, unless it is to interest of mortgagee to keep mortgage alive and it is his intention to do so.

2. SAME—MERGER CONTROLLED BY INTENT.
    In determining whether there is merger of estates when holder of mortgage becomes owner of fee, intention of mortgagee is controlling.

3. SAME—MERGER NOT PRESUMED UNLESS INTENT TO DO SO EXPRESSED.
    When it is to interest of mortgagee, who has become owner of fee, to keep mortgage alive, his intention to do so will be presumed unless his intention to merge is expressed.

4. Same—Expressed Intention to Merge Controlling—Presumptions.

Where holder of mortgage, on accepting quitclaim deed, clearly expressed intention of extinguishing mortgage, merger of estates was effected, and no secret intention to keep mortgage alive may be presumed.

5. Same—Extinguished Mortgage May Not be Revived.

Where mortgage is once extinguished by holder's expressed intention on acceptance of quitclaim deed from grantee assuming mortgage, it may not be revived subsequently against mortgagor.

Appeal from Macomb; Spier (James E.), J. Submitted October 30, 1931. (Docket No. 226, Calendar No. 36,107.) Decided January 4, 1932.

Bill by First National Bank of Utica, Michigan, and others against Max A. Ramm and others to foreclose a mortgage. Decree for plaintiffs. Defendants appeal. Reversed, and bill dismissed.

*Varnum J. Bowers*, for plaintiffs.

*Stone & Matthews* (*Corliss, Leete & Moody*, of counsel), for defendants.

McDonald, J. This is an appeal from a decree for foreclosure of a mortgage on certain land in the county of Macomb, Michigan. The land was owned by the plaintiffs Gustave Schultz and Bertha Schultz, his wife. On March 15, 1926, they conveyed it by warranty deed to defendant Max A. Ramm, and took a mortgage for part of the purchase price. This mortgage and accompanying note were assigned by Schultz and wife to the plaintiff bank to secure an indebtedness. On July 25, 1929, Ramm and wife conveyed the land by warranty deed to Daniel V. Wolf subject to the Schultz mortgage which Wolf

assumed and agreed to pay.   He defaulted in his payments, and to save foreclosure the bank accepted a quitclaim deed of his interest.   Subsequently, foreclosure suit was begun for the apparent purpose of obtaining a deficiency decree against Ramm.   Wolf was not made a party.   Ramm defended on the ground that, when Wolf gave the bank a quitclaim deed, there was a merger of the legal title and the equitable title, the effect of which was to extinguish the mortgage.   This contention presents the principal question in the case.

"There is no doubt about the general rule that when the holder of a real estate mortgage becomes the owner of the fee, the former estate is merged in the latter.   This rule is, however, subject to the exception that when it is to the interest of the mortgagee and is his intention to keep the mortgage alive, there is no merger, unless the rights of the mortgagor or third persons are affected thereby. 19 R. C. L. p. 484."   *Anderson* v. *Thompson,* 225 Mich. 155.

The intention is controlling.   It is either expressed or is implied from the circumstances of the transaction.   If it is to the interest of the mortgagee to keep the mortgage alive, the intention to do so will be implied; for it is presumed that a man intends to do that which is to his advantage.   But if the intention to merge the estates is expressed, the fact that it is to his benefit to keep the mortgage alive is immaterial.   In the instant case, the intention of the parties is quite clearly expressed in the following letters from the plaintiff bank to Mr. Wolf who held the title to the land and who had assumed payment of the mortgage.   The first letter, dated February 6, 1930, reads:

"Dear Sir:

"We have been informed that you are now the owner of property formerly owned by Max A. Ramm and Emmy Ramm, his wife, and on which Gustave Schultz and Bertha Schultz, his wife, had a mortgage. This mortgage was assigned to us and said assignment was recorded the second day of June, 1926. There was a principal payment of $2,000 and interest of $1,195.83 due on the mortgage January 1, 1930, and unless we are favored with your remittance for the above delinquent payments plus interest at the rate of seven per cent. from January 1, 1930, on the delinquent amount, we will turn this over to our attorney for foreclosure 10 days from date. Trusting that you will take care of this immediately to avoid this procedure, I am,

"Yours truly,
"E. F. SHULZ,
"Cashier."

A second letter, dated February 28, 1930, reads as follows:

"Dear Sir:

"About two weeks ago you called on me with reference to the mortgage that was assigned to us by Gustave Schultz and you stated at that time that you would let me know by the first of the following week as to what you was going to do regarding it. You stated that rather than to cause Mr. Schultz additional trouble and worry, if you could not handle the proposition you would quitclaim your interests to avoid further negotiations. I shall be pleased to hear from you by return mail and should you have decided to close the affair as you proposed we shall appreciate it if you will mail us the quitclaim deed together with the abstract and the deed that was given you by Mr. Ramm. Your prompt reply to the above will be appreciated.

"Yours truly,
"E. F. SHULZ,
"Cashier."

In response to this letter, Mr. Wolf delivered to the bank a quitclaim deed of his interest in the property and the deed he received from Ramm. The purpose of the transaction, as shown by the bank's correspondence, was to save the trouble and expense of foreclosing the mortgage. It could not have this effect if the plaintiffs intended to keep the mortgage alive. The cashier testified that he knew the acceptance of the quitclaim deed from Wolf would release him from payment of the mortgage and interest; that he intended it to have that effect. He testified that when he accepted the quitclaim deed:

"I felt that Mr. Wolf was entirely through with the matter."

In view of the intention of the parties, testified to by Mr. Wolf and plainly expressed in the cashier's letters, no secret intention to keep the mortgage alive as to Mr. Ramm can be presumed. We are only concerned with the expressed intention at the time of the transaction, and that, as shown in the bank's correspondence, was to extinguish the mortgage on receipt of conveyance of the fee to the mortgagees. When once extinguished it is gone forever. It could not be revived subsequently against Mr. Ramm, the mortgagor. We think there was a merger of the two estates, the legal effect of which was to extinguish the mortgage.

The record leaves no doubt as to the authority of the cashier to act for the bank and for Mr. and Mrs. Schultz. Those questions require no discussion.

A decree will be entered dismissing the bill of complaint, with costs to the defendants.

CLARK, C. J., and POTTER, SHARPE, NORTH, FEAD, WIEST, and BUTZEL, JJ., concurred.