SHEDD v. KRUSHINSKI.

1. INJUNCTION—MORTGAGES—GENERAL PLAN RESTRICTING USE OF LAND—FINDING OF COURT—EVIDENCE.
   In suit to restrain purchaser from mortgagee which had purchased the property at mortgage foreclosure sale from violating alleged restriction on use and occupancy of real estate by persons not of the Caucasian race, evidence sustained finding there was no general plan of restriction in force before the execution of the mortgage.

2. ESTATES—MERGER—INTENT.
   In determining the question of merger of interests in land, intent is the controlling factor.

3. MORTGAGES—FORECLOSURE—QUITCLAIM DEED—MERGER—EVIDENCE.
   Finding that intent of mortgagee which had purchased property at foreclosure sale in accepting quitclaim deed from mortgagor prior to expiration of extended time in which latter could have redeemed under mortgage moratorium act but which is not a party to suit to restrain violation of covenant made by mortgagor after execution of mortgage and restricting use and occupancy of land by persons other than of the Caucasian race, as determined from all the facts and circumstances in the case and reasonable inferences to be drawn therefrom, was not

to have been to merge the title so as to subject property to such restriction *held*, proper, where holding title under sheriff's deed free from such restriction was more beneficial to such grantee, not shown to have owned other property in the restricted area.

4. COVENANTS—LAND CONTRACT—RESTRICTIONS ON USE OF LAND.

Provisions of land contract subjecting use of premises to any restrictions upon the premises and to restrictions in former deeds of conveyance but failing to refer to restriction as to use of premises by persons other than of the Caucasian race, a restriction imposed by general agreement signed by mortgagor after execution of mortgage to vendor which later foreclosed it and sold property to defendant purchaser, were personal covenants between such purchaser and his vendor and not enforcible by other property owners.

5. ESTOPPEL—COVENANTS—DOWER.

Wife of purchaser under land contract from mortgagee which had purchased premises at mortgage foreclosure sale was not subject to restrictions on use of property which had been imposed by mortgagors after execution of mortgage on ground of estoppel by reason of the fact that previously she had been a grantee of the mortgagors, where her sole present interest in the property is only an inchoate dower interest.

6. SAME—COVENANTS—MORTGAGES—RECIPROCAL NEGATIVE EASEMENTS.

Mortgagee and purchaser from it under a land contract were not estopped from denying obligation to observe restrictive agreement as to use of property by persons other than the Caucasian race which had been imposed by mortgagors after the execution of the mortgage subsequently foreclosed as there was no reciprocal negative easement binding on mortgagee or its successors in interest and restrictions in land contract were personal between the parties thereto and enforcible only by the vendor.

Appeal from Wayne; Webster (Arthur), J. Submitted April 16, 1941. (Docket No. 76, Calendar No. 41,529.) Decided June 2, 1941.

Bill by Alice H. Shedd and others against Alex Krushinski and Anna Krushinski to restrain the violation of an alleged restriction on the use and

occupancy of real estate. Bill dismissed. Plaintiffs appeal. Affirmed.

*Richard S. Weber* (*Royal E. Thompson,* of counsel), for plaintiffs.

*Andrew J. Sura* (*J. Henry Freid,* of counsel), for defendants.

CHANDLER, J.   The individual plaintiffs and the Grand River Boulevard Improvement Association, a Michigan nonprofit corporation, filed their bill of complaint against the defendants, husband and wife, to prevent them from violating an alleged restriction against the use and occupancy by other than the Caucasian race of a certain building which defendant Alex Krushinski is purchasing on a land contract.   The restricted area is on West Grand boulevard between Tireman and McGraw avenues in the city of Detroit and the building involved is situate on the south 45 feet of lot 12, block 3 of Scovel's subdivision within such restricted area.

The record discloses that in the latter part of the year 1928 and the early part of 1929 a large majority of the owners of property on West Grand boulevard between the streets above mentioned signed restrictive agreements limiting the use and occupancy of their property to members of the Caucasian race only, which restrictions were duly recorded in the office of the register of deeds of Wayne county on March 14, 1929.

At the time these agreements were signed and made a matter of record, Jacob Barish and wife were the owners of that part of lot 12 hereinbefore described and they executed the before-mentioned restrictive agreement.   However, previous to the signing of this agreement, and in April, 1927, the

Barishes had given a mortgage to the Midland Mutual Life Insurance Company for the sum of $18,000 on the property in question, which mortgage was recorded May 5, 1927. Later the Barishes sold this property to a Mr. and Mrs. Ruski and subsequently this title passed to Mrs. Ruski (the present Mrs. Anna Krushinski, one of the defendants herein) through divorce proceedings.

Mrs. Ruski defaulted in her mortgage payments and the mortgagee foreclosed the mortgage and on December 19, 1933, a sheriff's deed was issued to it and was duly recorded on December 22, 1933.

One day before the statutory period of redemption would expire, Mrs. Ruski (then owner) filed a bill in the Wayne circuit court in chancery to obtain the benefits of the moratorium act.* A rental was fixed by the court and by the order, the Midland Mutual Life Insurance Company was prevented from taking possession of the property under its sheriff's deed. This order was in effect until January 15, 1938, at which time Mrs. Ruski gave a quitclaim deed to the Midland Company, and two days later a stipulation of discontinuance of the moratorium suit and an order based thereon was entered discontinuing said suit. The quitclaim deed from Mrs. Krushinski to the Midland company was never recorded.

On the same day of the discontinuance of the moratorium suit, the Midland company sold the property in question by land contract to defendant Alex Krushinski, which contract contains the following references to restriction "subject to all restrictions upon the use of the property" and "subject to all conditions and restrictions contained in former deeds of conveyance whereby said real

---

* Act No. 98, Pub. Acts 1933, as amended by Act No. 20, Pub. Acts 1934 (1st Ex. Sess.).—REPORTER.

estate has been conveyed." There is nothing in the record to indicate that there were any restrictive clauses in any former deeds of conveyance to the land in question.

The case is before us on appeal from a decree entered in the court below dismissing plaintiffs' bill of complaint.

The defendants are charged in the bill of complaint with having leased the whole or some part of the four-family flat located on that part of Lot 12 hereinbefore described to persons who are not of the Caucasian race, but who are negroes, in violation of the restrictive agreement of record. The charge that defendants have leased some part of the premises in question to persons other than of the Caucasian race is admitted by them, but they deny that said leasing is in violation of any restrictive agreement which is binding upon them.

Plaintiffs by amended bill of complaint further charge:

"That there is in existence and has been for a considerable number of years, a general plan and scheme adopted and maintained by the owners of the premises situated in blocks 1 to 9 of said subdivision, located on West Grand boulevard between Tireman and McGraw avenues, that such premises shall be restricted to use and occupancy by members of the white or Caucasian race, except servants, and on information and belief, that the defendants before they acquired any interest in the premises described in the next succeeding paragraph had actual and/or constructive notice of said general plan and scheme of restriction."

This allegation is denied by amended answer of defendants.

At the conclusion of the hearing the trial judge

1941]    S<span>HEDD</span> <span>v.</span> K<span>RUSHINSKI</span>.    165

made the following findings of fact and conclusions of law with reference to plaintiffs' proof on the existence of a general plan of restriction claimed to have been in vogue prior to the time of the giving of the mortgage by the Barishes to the Midland company on the premises in question:

"With reference to the question of a general plan, I am of the opinion that the plaintiffs have not shown sufficient facts to warrant the court in finding that prior to the latter part of 1928, there was a general plan to restrict the occupancy of the property in question to members of the Caucasian race. A number of witnesses were produced who testified to gentlemen's agreements and to various talks between neighbors as to preventing the use of their property by colored persons. There is no showing that there was a general meeting of all the restricted property owners at which they verbally agreed with each other to maintain such restrictions. Some lot owners talked with others, but not with all of the lot owners; and it would appear to me that the net result is that there was some sort of a general understanding of little groups that they would carry out the so-called gentlemen's agreements. In order to have a general plan, it would seem to me that it must have been of such a character as to be definite and binding generally upon all of the owners. I do not mean to say that each individual lot owner would have to be bound, but the plan would have to be general enough to be called a general plan; and those who did not agree to this general plan certainly could not be bound by any restriction the others agreed upon whether it benefited them or not. There is nothing in the testimony to show that the Barishes, who formerly owned the lot here in question, entered into any such agreement as to a general plan prior to the time when they actually signed the written restrictive agreement. In my opinion, there-

fore, a finding that there was a general plan prior to the written agreements of 1928 is not warranted by the testimony."

A careful review of the record clearly discloses that no finding or conclusion other than that reached by the chancellor on this phase of the case could be sustained. *Sanborn* v. *McLean,* 233 Mich. 227 (60 A. L. R. 1212).

While plaintiffs' assignments of error are numerous, the only other questions involved which were raised by the pleadings and proof and passed upon by the trial court and which we shall discuss are as follows:

(1) When the Midland company, defendant Alex Krushinski's vendor, accepted the quitclaim deed from Mrs. Ruski, owner of the legal title, did its then title, by virtue of the sheriff's deed, merge in said quitclaim deed and subject such title to the restrictions entered into by the grantors of Mr. and Mrs. Ruski subsequent to the giving of the mortgage by said grantors to the Midland company?

(2) Can defendant Alex Krushinski be enjoined from the use and occupancy of his property by others than those of the Caucasian race because the land contract in which he is vendee and the Midland company is vendor contains the restrictive language hereinbefore detailed?

(3) If the restrictive language used in the land contract is definite and unambiguous enough to be enforceable (bearing in mind the restriction agreement sought to be enforced was entered into subsequent to the execution of the foreclosed mortgage), can any one other than the vendor in said land contract restrain the violation of such restriction or restrictions contained therein?

Taking up for consideration these questions, we must hold that in view of the numerous and har-

monious decisions of this court, it is elementary, in determining the question of merger, that intent is the controlling factor. *Cook* v. *Foster,* 96 Mich. 610; *Anderson* v. *Thompson,* 225 Mich. 155; *First National Bank of Utica* v. *Ramm,* 256 Mich. 573; *Ponstein* v. *Van Dyk,* 282 Mich. 350; *Beal* v. *Alschuler,* 277 Mich. 66.

The Midland company which held the sheriff's deed and accepted the quitclaim deed is not a party to this proceeding, and its intent must be determined from all the facts and circumstances in the case, and the reasonable inference to be drawn therefrom. The Midland company already had the sheriff's deed, which gave to it all of the interest that the Barishes had in the property at the time the mortgage was given, subject only to the right of redemption by Mrs. Ruski and the disposition of the moratorium order. Defendant Alex Krushinski was desirous of purchasing the property. What was done, that is, the delivery of the quitclaim deed, the dismissal of the moratorium suit, and the sale by land contract to Mr. Krushinski, were the natural sequences following the negotiations between the parties to bring about the desired results. It was in effect all a part of one transaction, the acts for all practical purposes being simultaneous.

Appellants contend that the intention of the Midland company to have the title obtained by the sheriff's deed merge in the title secured by the quitclaim deed is made evident from the fact that its interest in the premises would be more valuable and secure by the maintenance of the restrictions as to its use because such restrictions as to use is a benefit to all property so restricted in the restricted area.

On the other hand the defendants contend that the Midland company indicated an intention to rely upon the sheriff's deed rather than the quitclaim

deed by not recording the latter; that if the Midland company allowed the title obtained by the sheriff's deed to merge in the quitclaim deed, it would hold subject to all infirmities in the title subsequent to the mortgage, that among such infirmities is a restriction against the free use of the property; that the law favors the free use of property and therefore the presumption is that the Midland company would wish to obtain the premises in an unrestricted condition. The trial court held that "The presumption arising out of a desire to avoid possible infirmities attached to the fee title subsequent to the date of the mortgage is so strong that the court must hold that it was not the intent of Midland that the sheriff's deed should merge in the fee title. *Dolese* v. *Bellows-Claude Neon Co.*, 261 Mich. 57. Midland, by holding the sheriff's deed, could, at its option, at a later date join with other property owners in upholding the restrictions as to use, or hold free of restrictions as best suited its purposes."

Nothing appears in the record indicating that the Midland company had any interest in property in the restricted area other than that sold to defendant Krushinski on land contract. We are therefore in accord with the holdings of the trial judge that it was most beneficial for the Midland company to become the owner of this property free of any restrictions, and that it was not its intent to have its equitable title to the property in question merge in the title obtained by virtue of the quitclaim deed. We must find that the only reasonable inference that can be drawn from all of the facts and circumstances in this case is that it was not the intention of the Midland to adopt the quitclaim deed as the source of its title, subjecting such title to the restrictions placed thereon by the holders of legal title

subsequent to the giving of the mortgage. It is clearly apparent that the title it obtained by the sheriff's deed is much more beneficial to the Midland company, and we can arrive at no other conclusion than that its intention was to claim and hold title under the sheriff's deed so that it might hold such property free of any restrictions.

Plaintiffs further contend that the restrictive language in the land contract subjects defendant Alex Krushinski to the restrictions which they are seeking here to enforce, because his contract contained the restrictive clauses hereinbefore detailed, so that he, defendant, under the principle of reciprocal negative easements, would have a right to enjoin the use of plaintiff's property contrary to restrictions, and that in equity he is accordingly himself bound by the reciprocal easement. The trial court disposed of this contention in the following language:

"The restrictive clauses in the land contract do not specifically refer to the question of restrictive use provided in the agreements sought to be enforced in this suit, namely, restrictions against use by others than those of the Caucasian race. The wording of this first clause is, 'Subject to any restrictions upon the use of the premises'; and as to the second clause, there are no restrictions in 'former deeds of conveyance' if this language is to be strictly construed. It is not at all improbable that these clauses were inserted in the purchase contract for the protection of the Midland company in case of litigation of the character of the case at bar, and in that sense are purely personal covenants.

"It is to be observed, however, that Midland is not a party to this litigation; also that the Midland company owns no other property in the restricted district. It would seem to me that it is possible for Midland at any time to waive the restrictions in

the land contract (whatever they are) or to refuse to enforce them as against its vendee. The insertion of the restrictive clauses in the land contract would appear to be for the benefit and protection of the Midland company. The company title relates back (as said above) to the situation at the date of the mortgage. The Midland company was never at any time a party to a restrictive agreement such as the owners of the other lots signed. Under such circumstances, it seems to me there can be no privity between plaintiffs and Midland company which permits plaintiffs to enforce a restriction which might or might not be enforced at the option of the Midland company. In other words, the mention of restrictions in the defendant Alex Krushinski's land contract is a matter entirely between Midland and the defendant Krushinski. The covenants are personal covenants. *Hayward* v. *Kinney*, 84 Mich. 591.

"Being personal covenants, they cannot be enforced by any person except the covenantee."

We are in accord with this finding and conclusion of the trial court.

It is further contended by appellants that defendant Anna Krushinski, having become the owner of the property in question as one of the grantees from the Barishes, the original mortgagors, became obligated to pay the mortgage to the Midland company and that had she fulfilled her obligation the mortgage would not have been foreclosed and the restrictive agreements imposed upon the property by the Barishes would be valid and effective; that, because of her failure to meet this obligation, the said Anna is now estopped in equity to take advantage of her own default and thus claim to be excused and released from the obligation imposed by the executed restrictive agreement. We do not think it necessary to pass upon this question as defendant Anna Krushinski, from the record here, has

no control over or interest in the property in question other than an inchoate right of dower in this real estate providing her husband meets his contractual obligations to the Midland company.

Appellants further claim that the defendant Alex Krushinski and the Midland Mutual Life Insurance Company are estopped from denying any obligation on their part, by reason of the restrictive agreement imposed upon the property in question by the Barishes, subsequent to the execution of the mortgage, under foreclosure of which defendant Alex Krushinski and the Midland company claim ownership. To discuss the question here raised as against the Midland company and defendant Alex Krushinski would mean a reiteration of what we have already said relative to any obligations that might be imposed on the theory that a reciprocal negative easement existed, which was recognized by the Midland company when it placed in its contract of purchase with defendant Alex Krushinski the restrictions hereinbefore quoted. We determined that there did not exist here a reciprocal negative easement binding upon the Midland or Krushinski and that the restriction in the Midland contract with Krushinski was merely a personal covenant which could be enforced only by the Midland company. *Hayward* v. *Kinney, supra.*

The decree entered in the court below is affirmed, with costs to appellees.

SHARPE, C. J., and BUSHNELL, BOYLES, NORTH, WIEST, and BUTZEL, JJ., concurred. McALLISTER, J., took no part in this decision.