SYLVANIA SAVINGS BANK *v.* TURNER

</div>

1. MORTGAGES—MERGER—INTENT.

The mortgagee's intent primarily determines whether the lien merges into the fee and extinguishes the debt when he has acquired the fee in mortgaged property; if it is in the mortgagee's interest to preserve his lien separately from the fee, it will ordinarily be concluded that he did not intend to merge the lien into the fee.

2. MORTGAGES—MERGER—INTENT—BEST INTEREST.

A mortgage lien on property did not merge into the fee when the mortgagee acquired title to the property where there was a second lien on the property held by a third party, because a merger would have made the second lien a first lien and would have been contrary to the interest of the first lienor-fee holder.

<div align="center">

REFERENCES FOR POINTS IN HEADNOTES

</div>

[1] 37 Am Jur, Mortgages § 1191.
[2] 37 Am Jur, Mortgages §§ 1193, 1194.
Deed from mortgagor to mortgagee or from purchaser to vendor as merger of mortgage or of vendor's lien as regards intervening liens. 148 ALR 816.
[3] 46 Am Jur 2d, Judgments §§ 740, 751, 825 *et seq.*
Scope and character of meritorious defense as condition of relief from judgment. 174 ALR 10.
[4, 5] 46 Am Jur 2d, Judgments § 686.
[6] 41 Am Jur 2d, Judgments § 780.

3. JUDGMENTS—DEFAULT JUDGMENT—RELIEF—FRAUD—GOOD CAUSE.

A motion for relief from a default judgment on the ground of fraud must show both good cause and a meritorious defense (GCR 1963, 520.4, 528.3).

4. JUDGMENTS—DEFAULT JUDGMENT—RELIEF—GOOD CAUSE.

Good cause necessary to set aside a default judgment includes (1) a substantial defect or irregularity in the proceedings upon which the default was based, (2) a reasonable excuse for the failure to comply with the requirements which created the default, or (3) some other reason showing that manifest injustice would result from permitting the default to stand (GCR 1963, 520.4).

5. JUDGMENTS—DEFAULT JUDGMENT—RELIEF—DISCRETION.

The trial judge has considerable discretion in ruling on a motion to set aside, or seeking relief from, a default judgment (GCR 1963, 520.4).

6. JUDGMENTS—RELIEF—FRAUD—EVIDENCE.

A claim that a judgment was obtained by fraud should be strongly supported by evidence (GCR 1963, 528.3).

Appeal from Monroe, William J. Weipert, Jr., J. Submitted Division 2 June 5, 1970, at Detroit. (Docket No. 8,506.)   Decided October 30, 1970.

Complaint by The Sylvania Savings Bank Company of Sylvania, Ohio and The Community Savings and Loan Association of Sylvania against William G. Turner and Constance M. Turner for foreclosure of mortgages.   Default judgment for plaintiffs.   Defendants' motion for relief from the judgment denied.   Defendants appeal.   Affirmed.

*Ready, Braunlich & Ready* for plaintiffs.

*William E. Winson* (*Thomas W. Pruden,* of counsel) for defendants.

Before: J. H. Gillis, P. J., and Levin and Bor-
radaile,* JJ.

Levin, J.  The defendants appeal an order of
the trial court denying their motion filed under GCR
1963, 528 for relief from a default judgment.  We
affirm.

The defendants mortgaged two parcels of real
estate, a restaurant and their home, to plaintiff
Community Savings and Loan Association to secure
repayment of a $40,000 indebtedness.  They de-
faulted in paying required installments of principal
and interest.

Community Savings acquired the fee to the res-
taurant by purchase at a mechanic's lien foreclosure
sale, subject to a right of the defendants to redeem
from the sale.[1]  Thereafter, but before expiration
of such redemption right, the plaintiffs commenced
this action on May 16, 1966, to foreclose the mort-
gage on both parcels.

The defendants were personally served on May
18, 1966.  Their default for failure to answer was
filed on September 9, 1966, and a default judgment
was entered on July 7, 1967, determining that the
amount of the defendants' indebtedness to Com-
munity Savings was $44,370.89.

At a mortgage foreclosure sale on August 31,
1967, the defendants' home was sold for $8,000 to
plaintiff, Sylvania Savings Bank Company, suc-

---

* Circuit judge, sitting on the Court of Appeals by assignment.
[1] The defendants were indebted to a contractor who commenced
an action to foreclose a mechanic's lien on the restaurant.  A judg-
ment was entered determining that the mechanic's lien was superior
to the mortgage held by Community Savings and ordering that a
foreclosure sale be held.  On February 11, 1966 the contractor as-
signed the judgment and lien to Community Savings for the sum of
$4,100.  A judicial foreclosure sale was held on April 26, 1966 and
the sale was confirmed to Community Savings for the sum of $4,904.73.
On June 26, 1966, a redemption period specified in the court's order
expired and title to the restaurant vested in Community Savings.

cessor by merger to Community Savings.[2]  The defendants were notified of the filing of the circuit court commissioners' report of sale, which determined that there was a deficiency of $36,902.45,[3] and that they could file objections within ten days; they made no response.  The sale was confirmed September 18, 1967.

The defendants did not redeem from the mechanic's lien foreclosure sale of the restaurant, and the bank did not proceed with the foreclosure of its mortgage on the restaurant.  The bank expended, after acquiring the restaurant, over $5,000 on improvements, maintenance, taxes, and insurance.  On November 3, 1967, *i.e.*, after the confirmation of the mortgage foreclosure sale of the defendant's home, the bank sold the restaurant to a third person for an amount not disclosed on the record.

Shortly before the expiration of the defendants' equity of redemption in their home they filed, on February 13, 1968, a motion for relief from the July 7, 1967 default judgment.

The motion alleged that on June 26, 1966, the date that Community Savings acquired fee title to the restaurant (see footnote 1), its value exceeded the sum of (1) the amount of defendants' indebtedness secured by the mortgage and (2) the cost incurred by Community Savings in acquiring the fee through the mechanic's lien foreclosure sale.  This allegation is not supported either by affidavit or by evidence.

During oral argument in our Court we were advised by Community Savings' attorney that it sold the restaurant for a price between $40,000 and $50,000.  If the sales price was, say, $45,000, and

---

[2] On July 25, 1967 Community Savings merged with Sylvania Savings and, on the same date, assigned both the default judgment and the mortgage to Sylvania Savings.

[3] See footnote 9.

one adds to that figure the $8,000 bid at the mortgage foreclosure sale of the defendants' home, the total amount realized by the bank was $53,000. The defendants' indebtedness to the bank, as determined by the default judgment, was $44,307.89; the sum of that amount and the amount for which the mechanic's lien foreclosure sale was confirmed to the bank, $4,904.73, and the $5,000 expended for improvements, maintenance, taxes, and insurance before the sale of the restaurant in November, 1967, is $54,215.62 — $1,215.62 more than the $53,000 postulated as realized by the bank from the sale of the restaurant and the mortgage foreclosure sale of the home.[4]

The defendants contend that their indebtedness to Community Savings was discharged by merger of the fee interest and the mortgagee's interest in the restaurant. They claim the merger occurred either when Community Savings acquired the fee upon expiration of the mechanic's lien foreclosure redemption period or when, after confirmation of the mortgage foreclosure sale of the home, the restaurant was sold free of the mortgage. They assert that it was, therefore, a fraud to have taken a default mortgage foreclosure judgment against them for the entire indebtedness or to sell the home pursuant to that judgment, and that in all events it was a fraud not to credit against the indebtedness the excess of the value or sales price of the restaurant over the cost of acquiring the fee.

When a mortgagee acquires fee title to the mortgaged property he frequently has no further reason to keep alive the lien of the mortgage. In such event the lien may merge into the fee and extinguish

---

[4] We were advised that the actual expenditures for improvements, maintenance, taxes and insurance substantially exceeded $5,000, and that additional sums were expended for brokerage and legal fees in connection with the sale of the restaurant.

the debt.   But whether this occurs depends fundamentally on the mortgagee's intention.   If it is in his interest to preserve his lien separately from the fee, it will ordinarily be concluded that he did not intend to merge the lien into the fee.[5]

In this case, when Community Savings acquired the fee to the restaurant in 1966 it was encumbered by a second mortgage for $11,000.[6]   If the lien of the first mortgage in favor of Community Savings merged into the fee then the second mortgage would have become a first lien.   It was, therefore, contrary to the interest of Community Savings to eliminate the priority of its first mortgage by merger; and it may safely be concluded that Community Savings did not intend to merge its fee and security interests.[7]   It is not claimed that there are other relevant facts which would support a finding that in 1966 Community Savings intended to merge its mortgage and fee interests.   No doubt, when it sold the restaurant to a third person in November, 1967 it conveyed the property free of the lien of the mortgage executed by the defendants;[8] but by then the mortgage

[5] See *First National Bank of Utica* v. *Ramm* (1932), 256 Mich 573, 575; *Beal* v. *Alschuler* (1936), 277 Mich 66, 68, 69; *Bugden* v. *Bailey* (1937), 279 Mich 12, 15; *Ponstein* v. *Van Dyk* (1937), 282 Mich 350, 352, 353; *Shedd* v. *Krushinski* (1941), 298 Mich 160, 166, 167.

See, generally, 5 Tiffany, Real Property (3d ed), §§ 1479, 1480, pp 503–506; 37 Am Jur, Mortgages, § 785, p 190.   See, also, Anno: Merger, as to other than intervening lienor, on purchase of paramount mortgage by owner of fee, 46 ALR 322.

[6] The second mortgage was in favor of Sylvania Savings and was additional security for a chattel mortgage loan on personal property in the restaurant.   Community Savings did not merge with Sylvania Savings until July 1967, over a year after Community Savings acquired the fee to the restaurant.

[7] *Beal* v. *Alschuler, supra; Budgen* v. *Bailey, supra; Overland-Wolf, Inc.* v. *Koory* (1968), 183 Neb 611 (162 NW2d 889); 5 Tiffany, Real Property (3d ed), § 1481, pp 509, 510, fn 40.

[8] See 5 Tiffany, Real Property (3d ed), § 1484, pp 518, 519.   Compare *Ames* v. *Miller* (1902), 65 Neb 204 (91 NW 250, 253), with *Peterborough Savings Bank* v. *Pierce* (1898), 54 Neb 712 (75 NW 20, 22), and *Merchant's Trust Co.* v. *Davis* (1930), 49 Idaho 494 (290 P 383, 386).

on the defendants' home had been foreclosed and the sale confirmed.

At the time the default judgment was entered, the price that would be realized upon a sale of the restaurant was unknown, and it did not become known until the restaurant was sold, which occurred after the confirmation of the mortgage foreclosure sale of the home. The defendants' argument, therefore, of necessity narrows down to a claim that the fraud was in failing to credit the value, as distinguished from the sale price, of the restaurant.

Even if the bank should have allowed the claimed credit,[9] there is no concrete evidence of the value of the restaurant at the time the default judgment was entered. The only evidence is such as we can extrapolate from the facts that a $40,000 mortgage loan was given by a bank, the subsequent failure of the restaurant business, our knowledge that creditors, particularly banks, do not ordinarily retain property such as this for a longer time than needed to effect disposition, and the sales price which we were told was realized when the property was sold in November, 1967. Based on the foregoing, we have no reason to conclude that the value of the restaurant at the time the default judgment was entered was large enough so that, if the defendants were entitled to a credit based on that value, the default

[9] Our disposition of this case makes it unnecessary to consider whether a judgment for a deficiency may be obtained where less than all the land subject to the mortgage is judicially sold or the power of a court of equity when determining the amount of a deficiency judgment to credit the value of the mortgagor's equity of redemption in the unsold property. See MCLA § 600.3150 (Stat Ann 1962 Rev § 27A.3150); 59 CJS, Mortgages, §§ 778, p 1474; 782, p 1481; 398, p 562; 519, p 848; 37 Am Jur, Mortgages, §§ 859, 866, pp 235 *et seq.*, 244 *et seq.*

The record does not show whether a separate deficiency judgment was entered. The defendants have not asked for any relief from the deficiency determined in the commissioner's report of sale. We were told by both plaintiffs' and defendants' attorneys that the deficiency is not collectible.

judgment would have been reduced to an amount less than the $8,000 bid for the defendants' home.

Paragraph 7 of the motion for relief from judgment asserts that the plaintiffs' agents represented that they would cooperate with the defendants in their efforts to sell the restaurant and that is why they did not answer or appear. This allegation is not supported by an affidavit or by evidence, nor was a hearing sought at which evidence in support of this allegation could be introduced. The trial judge found that the defendants did not claim that the bank committed "a deliberate fraud upon the court." We were advised during oral argument that no such claim is now made.

GCR 1963, 528.3 provides that a motion for relief from judgment on the ground of "fraud (whether heretofore denominated intrinsic or extrinsic)"[10]

---

[10] It has been said that a court of equity may set aside a judgment on the ground of fraud only where the fraud is extrinsic to the matter tried in the original action, *i.e.*, when its effect is to prevent the unsuccessful party from having a trial or from presenting his case fully. 3 Pomeroy, Equity Jurisprudence (5th ed), § 919b, pp 608, 609; 46 Am Jur 2d, Judgments, § 825, p 980. But relief will not be granted for fraud which is deemed intrinsic, that is, where the fraud pertains to an issue that was or could have been litigated in the original action, *e.g.*, perjury and the concealment of a defense. 3 Pomeroy, Equity Jurisprudence (5th ed), § 919a, pp 606–608; 46 Am Jur 2d, Judgments, § 826, pp 982, 983; § 834, p 989.

The rule is based on the need to end litigation. Far too many judgments would be subject to attack if a judgment could be reopened upon a claim that an erroneous result was reached and that a fraud was committed because the party who obtained the judgment failed to testify fully and accurately or to disclose to his adversary a possible defense. 3 Pomeroy, Equity Jurisprudence (5th ed), § 919b, p 610; 46 Am Jur 2d, Judgments, § 835, p 990. The extrinsic-intrinsic fraud distinction has been recognized in Michigan cases. See *Fawcett* v. *Atherton* (1941), 298 Mich 362; *Columbia Casualty Co.* v. *Klettke* (1932), 259 Mich 564; *Steele* v. *Culver* (1909), 157 Mich 344.

It has also been said, however, that this limitation applies only in equitable actions for relief from judgments and that upon direct application in the proceeding where the judgment was entered a judgment may be set aside on grounds which would have to be considered intrinsic fraud. See 3 Honigman and Hawkins, Michigan Court Rules Annotated (2d ed), authors' comments, p 184. Supporting authority can be found in decisions of the Michigan Supreme Court setting

shall be filed "within a reasonable time, and * * * not more than 1 year after the judgment * * * was entered".

The motion in this case was filed within one year of the entry of the default judgment. Putting aside the questions whether it was filed "within a reasonable time" and whether the conduct of the bank complained of constituted fraud, we note, as did the trial judge, the failure of the defendants to demonstrate either good cause or that they have a meritorious defense. GCR 1963, 520.4 provides:

"For good cause shown the court may set aside an entry of default, and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 528. * * * A proceeding to set aside default or a default judgment, except when grounded on want of jurisdiction over the defendant, shall be granted only if good cause is shown and an affidavit of facts showing a meritorious defense is filed."

The requirements that a defendant who asks that a default judgment be set aside demonstrate both

aside divorce decrees. *Allen* v. *Allen* (1954), 341 Mich 543; *Lantinga* v. *Lantinga* (1947), 318 Mich 78. Contrast *Curtis* v. *Curtis* (1930), 250 Mich 105, 109.

In all events, rule 528 expressly provides that it does not limit the power of a court to set aside a judgment for "fraud upon the court." Rule 528 is borrowed from Rule 60 of the Federal Rules of Civil Procedure; the advisory committee comment to Rule 60 cites as an illustration of a fraud upon the court the factual situation in *Hazel-Atlas Glass Co.* v. *Hartford Empire Co.* (1944) 322 US 238 (64 S Ct 997, 88 L Ed 1250). See, also, *Allen* v. *Allen*, *supra*, p 549; *Linn* v. *Linn* (1955), 341 Mich 668, 676; *DeHaan* v. *DeHaan* (1957), 348 Mich 199, 200, 201.

But, as one respected authority has pointed out, whenever a judgment has been obtained by fraud, the fraud can be regarded as perpetrated upon the court as well as upon the injured party. 3 Pomeroy, Equity Jurisprudence (5th ed), § 919a, pp 603, 604. If the policy underlying the extrinsic-intrinsic fraud distinction can be avoided by characterizing a fraud that the court finds particularly distasteful as a fraud on the court, then the entire matter becomes subjective and is left at large for courts to do as they think appropriate in particular cases. See, generally, Restatement of Judgments, ch 5, topic 2, § 117 *et seq.*, p 565 *et seq.*

good cause and that he has a meritorious defense have been deemed applicable in cases where relief was sought on grounds set forth in rule 528.3.[11]   We have recently observed that good cause has been thought to include (1) a substantial defect or irregularity in the proceedings upon which the default was based, (2) a reasonable excuse for failure to comply with the requirements which created the default, or (3) some other reason showing that manifest injustice would result from permitting the default to stand.[12]

No claim is made that there was a substantial defect or irregularity in these proceedings or that there was any reasonable excuse for the defendants' failure to appear and defend in this action.

No affidavit of merits was filed and, upon our review of the sketchy record and the facts adduced during oral argument, we could not properly conclude that a manifest injustice would result from permitting the default judgment to stand or that the defendants have a meritorious defense.   A trial judge enjoys a considerable measure of discretion

[11] Rules 520 and 528 are based on Rules 55 and 60, respectively, of the Federal Rules of Civil Procedure; our Rule 528.3 follows Federal Rule 60(b) verbatim.   The Federal courts have consistently refused to entertain a motion for relief from a default judgment under Rule 60(b) except upon a showing of a meritorious defense. *Rutland Transit Company* v. *Chicago Tunnel Terminal Company* (CA 7, 1956), 233 F2d 655, 657; *Consolidated Masonry & Fireproofing, Inc.* v. *Wagman Construction Corporation* (CA 4, 1967), 383 F2d 249, 251, 252; *Federal Enterprises, Inc.* v. *Frank Allbritten Motors, Inc.* (WD Mo, 1954), 16 FRD 109, 112, 113; *Trueblood* v. *Grayson Shops of Tennessee, Inc.* (ED Va, 1963), 32 FRD 190, 196, 197; *Bowles* v. *Branick* (WD Mo, 1946), 66 F Supp 557, 558; *United States* v. *Sipler* (MD Pa, 1951), 94 F Supp 987, 988; *Assmann* v. *Fleming* (CA 8, 1947), 159 F2d 332, 336; *United States* v. *$3,216.59 In United States Currency* (D SC, 1967), 41 FRD 433, 434.   See, also, *Koen* v. *Beardsley* (CA 10, 1933), 63 F2d 595, 597.

See, also, *Rhodes* v. *Rhodes* (1966), 3 Mich App 396; *Home Life Insurance Company* v. *Cohen* (1936), 278 Mich 169, 172.

*Wayne Creamery* v. *Suyak* (1968), 10 Mich App 41, is distinguishable; there the complaint did not inform the defendant of the true nature of the claim upon which the judgment was entered.

[12] See *Miranda* v. *Kersten* (1970), 24 Mich App 681.

in ruling on a motion to set aside,[13] or seeking relief from,[14] a default judgment. Claims that judgments have been obtained by fraud should be strongly supported;[15] in this case there is no such support.

Affirmed. Costs to plaintiffs.

All concurred.

---

[13] *Rhodes* v. *Rhodes* (1966), 3 Mich App 396, 403; *Hartman* v. *Roberts-Walby Enterprises, Inc.* (1969), 17 Mich App 724, 729; *Crew* v. *Zabowsky* (1959), 357 Mich 606, 609.

[14] *Ford* v. *Kossaras* (1966), 3 Mich App 321, 325; *Presque Isle Bank* v. *Kowalski* (1967), 6 Mich App 266, 271; *Wendel* v. *Swanberg* (1969), 17 Mich App 235, 238.

[15] 3 Honigman and Hawkins, Michigan Court Rules Annotated (2d ed), authors' comments, p 185.

See *Stradley* v. *Pailthorp, Acting Circuit Judge* (1893), 96 Mich 287, 290; *Jewell* v. *Jewell* (1959), 358 Mich 1, 3; *Denby* v. *Ellis* (1928), 245 Mich 124, 128.