BYERLEIN v SHIPP

Docket No. 110213. Submitted May 9, 1989, at Detroit. Decided
January 17, 1990. Leave to appeal applied for.

On February 4, 1970, plaintiff's late husband, Arthur Byerlein,
held a recorded first mortgage on a parcel of property owned by
Theodore and Celestine Graham. Between April 4, 1979, and
May 16, 1985, the Internal Revenue Service filed and recorded
several tax liens against the Grahams' interest in the property.
In June, 1983, plaintiff, Elizabeth Byerlein, as successor in
interest to her late husband, sued to foreclose. She did not join
the IRS as a party and failed to give the IRS actual notice of the
foreclosure proceedings. On June 11, 1984, a judgment of
foreclosure was entered in plaintiff's favor. A foreclosure sale
followed on November 20, 1984, at which time plaintiff pur-
chased the property for an amount slightly more than her lien
interest. Plaintiff received a judicial deed which was recorded
on November 27, 1984, and was subject to a six-month redemp-
tion period. The property was not redeemed and title vested in
the plaintiff on May 20, 1985. The IRS held a public auction on
July 22, 1985, after the IRS gave plaintiff written notice thereof,
and defendants, Eddie Shipp and Gwendolyn Brantly Shipp,
purchased the Grahams' interest in the subject property and
received a tax deed. Plaintiff then moved in the Wayne Circuit
Court to quiet title. The trial court, Thomas J. Brennan, J.,
granted plaintiff's motion for summary disposition and entered
an order expressly declaring defendants' tax deed void and
recognizing plaintiff as owner in fee simple. Defendants ap-
pealed.

The Court of Appeals *held:*

1. Defendants did timely file their appeal.

2. The circuit court erred in setting aside defendants' tax
deed. The federal tax liens had not been extinguished following

REFERENCES

Am Jur 2d, Federal Tax Enforcement §§ 2, 10, 18, 21, 22, 64, 65;
Mortgages § 623; Quieting Title and Determination of Adverse
Claims § 289.

See the Index to Annotations under Foreclosure; Mortgages; Quiet-
ing Title; Tax Liens.

the foreclosure sale through which plaintiff had taken title. Plaintiff took title through the judicial deed subject to the perfected tax liens and the possibility of foreclosure on the basis of those liens.

3. A purchaser at a federal tax auction takes title to the property subject to any liens with priority over federal tax liens.

4. The case is remanded to determine whether from the circumstances of the November 20, 1984, foreclosure sale plaintiff expressly intended that her mortgage lien would merge with the fee. If so, the trial court shall enter judgment quieting title in defendants. If not, then defendants take title subject to plaintiff's lien on the property and any remedies she may have as senior lienholder.

Reversed and remanded.

1. QUIETING TITLE — JUDICIAL SALES — LIENS.

A purchaser at a judicial sale takes the property subject to all prior defects, liens and encumbrances of which he has notice or of which he could obtain knowledge under his duty to inform himself.

2. TAXATION — TAX LIENS.

Discharge of federal tax liens is governed by federal law, except to the extent that federal law makes state law controlling.

3. QUIETING TITLE — JUDICIAL SALES — TAX LIENS.

Foreclosure and sale pursuant to judicial proceedings will discharge an inferior federal tax lien only if the United States is named as a party to the judicial foreclosure proceedings, the federal tax lien is not filed in accordance with the provisions of local laws at the time the foreclosure proceedings are commenced, or the law makes no provision for the filing of such liens (26 USC 7425).

4. TAXATION — TAX AUCTIONS — LIENS.

A purchaser at a federal tax auction takes title to the property subject to any liens with priority over the federal tax liens.

5. TAXATION — TAX LIENS — PROPERTY — PROPERTY INTERESTS.

Federal law governs the priority of a federal tax lien against other claims to property; however, unless Congress has stated otherwise, state law determines what constitutes a property interest or right to property to which a federal tax lien may attach.

6. MORTGAGES — OWNER OF FEE — MERGER.

When the holder of a real estate mortgage becomes the owner of

the fee, the former estate generally is merged with the latter; when it is to the interest of the mortgagee and it is his intention to keep the mortgage alive, there is no merger, unless the rights of the mortgagor or third persons are affected thereby; the intention is controlling; if it is to the interest of the mortgagee to keep the mortgage alive, the intention to do so will be implied; if the intention to merge the estates is expressed, the fact that it is to the mortgagee's benefit to keep the mortgage alive is immaterial.

*Sempliner, Thomas, Boak & Smith* (by *Stephen H. Boak*), for plaintiff.

*Darwyn P. Fair,* for defendants.

Before: CYNAR, P.J., and GRIBBS and MARILYN KELLY, JJ.

PER CURIAM. Plaintiff brought suit to quiet title to a parcel of property for which plaintiff holds a judicial deed and defendants hold a subsequent United States tax deed. The circuit court granted summary disposition to plaintiff and entered an order voiding the tax deed and declaring plaintiff the owner of the subject property in fee simple. Defendants appeal as of right. We reverse and remand.

On February 4, 1970, plaintiff's late husband, Arthur Byerlein, held a recorded first mortgage on a parcel of property owned by Theodore and Celestine Graham. Between April 4, 1979, and May 16, 1985, the Internal Revenue Service filed and recorded several federal tax liens against the Grahams' interest in the subject property.

In June, 1983, plaintiff sued to foreclose, not joining the IRS as a party and also failing to give the IRS actual notice of the foreclosure proceedings. On June 11, 1984, a judgment of foreclosure was entered in plaintiff's favor. The foreclosure sale followed on November 20, 1984, at which time

plaintiff purchased the property for an amount slightly more than her lien interest. Plaintiff received a judicial deed which was recorded on November 27, 1984, and subject to a six-month redemption period. The property was not redeemed and title vested in the plaintiff on May 20, 1985.

On June 24, 1985, the IRS gave notice of a public auction, offering for sale the interest of the Grahams in the subject property. Plaintiff received written notice of the auction from the IRS by mail as evidenced by a copy of said notice attached to plaintiff's complaint in the present action. The auction was held on July 22, 1985, and defendants purchased the interest in the property and received a tax deed.

On July 6, 1987, plaintiff sued to quiet title. She subsequently moved for summary disposition. A hearing was held on March 25, 1988, and plaintiff's motion was granted. At that time the circuit court signed the motion praecipe. However, plaintiff apparently felt that a more detailed order was necessary and filed a proposed written order under the seven-day rule. Defendants responded with objections, claiming that plaintiff's proposed order went beyond the court's original decision. On May 20, 1988, plaintiff filed her motion for entry of judgment. Argument on the motion was heard on June 10, 1988, and the circuit court entered a written order on June 20, 1988, expressly declaring defendants' tax deed void and recognizing plaintiff as owner in fee simple. On July 11, 1988, defendants filed the present appeal.

As a threshold matter, plaintiff argues that this Court lacks jurisdiction due to defendants' failure to timely file their appeal. However, the record indicates that the circuit court entered its written order on June 20, 1988, and defendants filed their claim of appeal on July 11, within the twenty-one-

day limitation period for filing an appeal of right on a civil action. MCR 7.204. Though plaintiff argues that the date of the filing of the motion praecipe, March 25, 1988, is determinative, it is apparent from the record that there was a good deal of confusion and disagreement among the parties, including plaintiff, concerning the precise scope of the trial court's original decision. Under the circumstances, and given plaintiff's own conduct below, we can only conclude that the June 20, 1988, written order constitutes the final judgment of the trial court for purposes of this appeal. MCR 7.203(A).

With respect to defendants' contention that the circuit court erred as a matter of law when it set aside defendants' tax deed, we must agree. Defendants correctly argue that the federal tax liens had not been extinguished following the foreclosure sale through which plaintiff had taken title.

Under Michigan law, a purchaser at a judicial sale takes the property subject to all prior defects, liens and encumbrances of which he has notice or of which he could obtain knowledge under his duty to inform himself. *Janower v F M Sibley Lumber Co,* 245 Mich 571, 573; 222 NW 736 (1929).

Discharge of federal tax liens is governed by federal law, except to the extent that federal law makes state law controlling. *Berlin v United States,* 535 F Supp 298 (ED NY, 1982). "[M]atters directly affecting the nature or operation [of federal tax liens] are federal questions, regardless of whether the federal statutory scheme specifically deals with them or not." *United States v Brosnan,* 363 US 237, 240; 80 S Ct 1108; 4 L Ed 2d 1192 (1960). See also *Southern Bank of Lauderdale Co v Internal Revenue Service,* 770 F2d 1001 (CA 11, 1985).

The Federal Tax Lien Act, 26 USC 7425, was

intended to protect the United States, where its tax lien is junior, from its discharge under state law without prior notice to the United States of proceedings by which the property is sold. *Myers v United States,* 647 F2d 591 (CA 5, 1981).

26 USC 7425 states in pertinent part:

> (a) Judicial proceedings. If the United States is not joined as a party, a judgment in any civil action or suit described in subsection (a) of section 2410 of title 28 of the United States Code, or a judicial sale pursuant to such a judgment, with respect to property on which the United States has or claims a lien under the provisions of this title—
>
> (1) shall be made subject to and without disturbing the lien of the United States, if notice of such lien has been filed in the place provided by law for such filing at the time such action or suit is commenced, . . .
>
> \*    \*    \*
>
> If a judicial sale of property pursuant to a judgment in any civil action or suit to which the United States is not a party discharges a lien of the United States arising under the provisions of this title, the United States may claim, with the same priority as its lien had against the property sold, the proceeds (exclusive of costs) of such sale at any time before the distribution of such proceeds is ordered.

While plaintiff argues that subsection (b) of the statute is also applicable to this action, that subsection, by its express terms, applies only to nonjudicial proceedings. Section 7425(a) makes it clear that foreclosure and sale pursuant to judicial proceedings will discharge an inferior federal tax lien only if the United States is named as a party to the judicial foreclosure proceedings, the federal tax lien is not filed in accordance with the provisions of local laws at the time the foreclosure

proceedings are commenced, or the law makes no provision for the filing of such liens. *Myers, supra.*

Since the IRS had properly filed notice of its tax liens prior to plaintiff's initiation of judicial foreclosure proceedings, and since plaintiff failed to give the IRS notice or join it as a party to those proceedings, plaintiff took title through the judicial deed subject to the perfected tax liens and the possibility of foreclosure on the basis of those liens. As noted by the *Myers* court:

> Under § 6331, the United States is authorized to collect delinquent taxes "by levy upon all property and rights to property . . . on which there is a lien provided in this chapter for the payment of such tax." 26 USC 6331(a). The term "levy" as used in the Act includes "the power of distraint and seizure by any means." 26 USC 6331(b). And, where levy is proper, the United States may seize and sell the property levied upon. *Id. Such levy and seizure need not be accomplished while the property is in the hands of the taxpayer; so long as the property is subject to a valid federal tax lien, it may be seized in the hands of any subsequent purchaser.* Treas Reg § 301.6331-1(a)(1) (1979); Mertens [Federal Income Taxation:] Code Commentary, § 6331:1 [1980]; W Plumb & L Wright, Federal Tax Liens 201 (2d ed, 1969). [647 F2d 601. Emphasis added.]

In addition, the record indicates that plaintiff received notice of the IRS public auction, pursuant to 26 USC 6335, but failed either to bid at the auction or redeem the property either before the auction for the amount of the taxes owed plus expenses if any, as provided under 26 USC 6337(a), or within 180 days after the auction for the amount of the purchase price plus interest, as provided under 26 USC 6337(b). Furthermore, plaintiff did not claim any irregularity or impropriety in the IRS foreclosure proceedings.

However, though we are unable to conclude that plaintiff is entitled to summary disposition quieting title, neither can we conclude conversely that defendants are entitled to judgment quieting title. While plaintiff's deed fails, her mortgage lien may yet survive.

A purchaser at a tax auction takes title to the property subject to any liens with priority over the federal tax liens, *Streule v Gulf Finance Corp,* 265 A2d 298 (DC App, 1970); see also 26 USC 6339 (certificate of sale discharges all *junior* encumbrances). Thus, the question now becomes whether plaintiff's mortgage lien, which was senior to the IRS tax liens, survived the plaintiff's foreclosure and purchase of the property, or whether plaintiff's purchase of the mortgaged property caused a merger of the mortgage lien and fee estate, thereby extinguishing the mortgage lien.

As stated in *United States v State of Colorado,* 872 F2d 338, 339-340 (CA 10, 1989):

> Federal law governs the priority of a tax lien against other claims to property. *Aquilino v United States,* 363 US 509, 513-514; 80 S Ct 1277, 1280-1281; 4 L Ed 2d 1365 [1368-1369] (1960); *United States v Wingfield,* 822 F2d 1466, 1473 (CA 10, 1987), cert dis — US —; 108 S Ct 1762; 100 L Ed 2d 222 (1988); see IRC §§ 6321-6323. *Unless Congress has stated otherwise, however, we look to state law in determining what constitutes a property interest or right to property to which a federal tax lien may attach. United States v Brosnan,* 363 US 237, 240-242; 80 S Ct 1108, 1110-1112; 4 L Ed 2d 1192 [1195-1196] (1960); see *Bigheart Pipeline Corp v United States,* 835 F2d 766, 767 (CA 10, 1987). *Accordingly, whether merger applies in this case must be answered by reference to state law.* See *First American Title Ins Co v United States,* 848 F2d 969, 971 (CA 9, 1988) (applying California law of merger); *United States v Polk,*

822 F2d 871, 874 (CA 9, 1987) (applying Arizona law of merger); *Southern Bank v IRS,* 770 F2d 1001, 1007 (CA 11, 1985) (applying Alabama law of merger), cert den 476 US 1169; 106 S Ct 2890; 90 L Ed 2d 977 (1986). [Emphasis added.]

In *First American Title Ins Co v United States,* 848 F2d 969, 971 (CA 9, 1988), the ninth circuit court of appeals determined:

> Under California law, the general rule is that a mortgagee's lien is extinguished when the mortgagee purchases the property to which his or her lien was attached. . . . The theory is that the mortgagee's lesser interest (the lien) has "merged" into the greater interest (the fee). . . .
>
> [However,] California law recognizes an equitable exception to the rule: "Equity will prevent or permit a merger as will best subserve the purposes of justice and the actual and just intent of the parties. . . . In the absence of an expression of intention, if the interest of the person in whom the several estates have united, as shown from all the circumstances, would be best subserved by keeping them separate, the intent to do so will ordinarily be implied."

The court also noted:

> Granting equitable relief to [plaintiff mortgagee] would not undermine Congress's intent. If [plaintiff's] lien survives the sale, the government's junior liens still are unaffected by the sale, and the government can protect its interest in having a fair sale in the future when [plaintiff] sells the property or when the government forecloses on it. Granting equitable relief also will not discourage senior lienors such as [plaintiff] from notifying the government of future sales. Senior lienors have a strong incentive to notify the government because doing so will extinguish the government's junior liens when the property is sold. See 26 USC

7425(b)(2) and *Sohn v California Pacific Title Ins Co,* 124 Cal App 2d 757 [767]; 269 P2d 223, 230 (1954). If notice is not given, the government's liens survive the sale, leaving an encumbrance on the property. We believe that this is the penalty that Congress intended to impose on senior lienors such as [plaintiff]. [848 F2d 972-973.]

In Michigan, the equitable rule regarding merger is much the same as that in California:

There is no doubt about the general rule that when the holder of a real estate mortgage becomes the owner of the fee, the former estate is merged in the latter. This rule is, however, subject to the exception that when it is to the interest of the mortgagee and is his intention to keep the mortgage alive, there is no merger, unless the rights of the mortgagor or third persons are affected thereby. [*Anderson v Thompson,* 225 Mich 155, 159; 195 NW 689 (1923).]

Further:

The intention is controlling. It is either expressed or is implied from the circumstances of the transaction. If it is to the interest of the mortgagee to keep the mortgage alive, the intention to do so will be implied; for it is presumed that a man intends to do that which is to his advantage. But if the intention to merge the estates is expressed, the fact that it is to his benefit to keep the mortgage alive is immaterial. [*First National Bank of Utica v Ramm,* 256 Mich 573, 575; 240 NW 32 (1932).]

See also *Vollmer v Coenis,* 309 Mich 319, 324; 15 NW2d 654 (1944); *Clark v Federal Land Bank of Saint Paul,* 167 Mich App 439, 444; 423 NW2d 220 (1987); *Sylvania Savings Bank v Turner,* 27 Mich App 640, 644-645; 183 NW2d 894 (1970).

Quite obviously it is in plaintiff's best interest to keep her mortgage lien alive, and her intent to do so will be implied absent an expressed intent to the contrary. As is often the case, a mortgagee at a foreclosure sale will purchase the property to prevent the property from being purchased by another party at below market value or below the amount of the lien. As noted by the tenth circuit in *United States v State of Colorado, supra* at 340, it would be absurd for a mortgagee in such a circumstance to destroy her senior lien, which would only benefit junior lienholders, and thereby preclude collection on the debt owed her.

Furthermore, the rights of defendants would not be prejudiced by a finding that plaintiff's mortgage lien survived. As noted previously, and indeed as expressly stated in the IRS Notice of Public Auction Sale, the purchaser takes title "subject to any prior valid outstanding mortgages, encumbrances, or other liens in favor of third parties against the taxpayer that are superior to ·the lien of the United States."

Therefore, we remand this case to the trial court for a finding of fact as to whether from the circumstances of the November 20, 1984, foreclosure sale plaintiff expressly intended that her mortgage lien would merge with the fee. If the court finds that such an expressed intent existed, the court shall enter judgment quieting title in defendants. If, on the other hand, the court finds that no such expressed intent existed, then defendants take title subject to plaintiff's lien on the property and any remedies under the law plaintiff may have as a senior lienholder.

Reversed and remanded. We do not retain jurisdiction.