BOARD OF SUPERVISORS OF ALCONA CO. v. AUDITOR GENERAL.

TAXATION—STATE TAX LANDS—HOMESTEAD LANDS—NATURE OF STATE'S TITLE—SUMS COLLECTED FOR TRESPASS—OWNERSHIP.

An examination of the various provisions of the tax law leads to the conclusion that, while the title of the State to State tax and tax homestead lands is absolute as between itself and the original owners, it holds such title for the State, county, and township, in proportion to the several taxes due to each; and hence moneys collected by the State land commissioner under 1 Comp. Laws, § 1323, for trespasses committed on such lands, belong to the several municipalities in the proportion indicated.

*Mandamus* by the board of supervisors of Alcona county to compel Perry F. Powers, auditor general, and Edwin A. Wildey, commissioner of the State land office,

to account for certain moneys. Submitted November 19, 1903. (Docket No. 174.) Writ granted March 23, 1904.

*John H. Killmaster* (*H. K. Gustin* and *De Vere Hall*, of counsel), for relator.

*Charles A. Blair*, Attorney General (*Charles W. McGill* and *Emil G. Stenberg*, of counsel), for respondents.

Montgomery, J. The application for *mandamus* in this case presents three contentions on behalf of relator:

*First.* That moneys collected for trespass committed upon the State tax lands situated in Alcona county be accounted for to the State, the county, and the townships thereof, in proportion to the amount of taxes due each.

*Second.* That the moneys collected for trespass committed upon the State tax homestead lands situated in Alcona county be accounted for to the State, the county, and the townships thereof, in proportion to the amount of taxes due each at the time such lands were deeded to the State.

*Third.* That the moneys received by the State land commissioner from the sale of State tax homestead lands be accounted for to the State, the county, and the townships thereof, in proportion to the amount of taxes due each at the time such lands were deeded to the State and became tax homestead lands.

Respondents concede relator's third contention, and we need, therefore, spend no time over it.

It is insisted on behalf of the respondents that the State acquired, under the general tax law, an absolute title to the State tax and tax homestead lands in Alcona county, and should therefore deal with them as State property. It is further stated that, under sections 1393 and 1323 of the Compiled Laws of 1897, there is no requirement that the moneys should be paid into the treasury for the use of the county and townships.

To attempt to set out at length all the provisions of the tax law which may have a bearing upon the questions involved would extend this opinion unreasonably. It may be generally stated that the theory of the tax law is that,

up to a certain stage in the proceedings, at least, the township is the agent of the county and State in the assessment and collection of taxes, while at the same time acting on its own behalf; that at a later date the county occupies the same relation to the State and the township, and still later the State assumes this relation to the township and county. When the State becomes a purchaser of tax lands, it is provided by section 70 of the tax law (1 Comp. Laws, § 3893) that, in a certain contingency, the county treasurer shall bid off the land in the name of the State, for the State, county, and township, in proportion to the taxes, interest, and charges due each. If at this date the absolute title vested in the State, there could be little doubt as to what the interest of the respective municipalities would be. The language is plain and unambiguous, and the State would hold the title for the use of the State, county, and township in certain named proportions. The respective interests would not be more distinctly fixed had aliquot parts been described. Section 89 (1 Comp. Laws, § 3912) provides for adding interest on the redemption of lands and payment of taxes, and provides that the interest and taxes shall be paid to the State, county, and township, in proportion to their respective rights therein.

The provisions as to State tax homestead lands are that, when the lands are deeded, all the taxes charged against such lands shall be canceled, and that no part of these taxes due to the township or county shall be charged to the State, but each shall bear the share of loss on such taxes that properly applies to each. Section 130 (1 Comp. Laws, § 3952). By section 131 as amended (Act No. 107, Pub. Acts 1899), it is provided that, before any proceedings shall be taken against the purchaser of any State tax homestead lands by the original owner, he shall pay all delinquent taxes returned to the auditor general, together with interest, costs, and charges, and the amount so received by the auditor general is to be deposited in the State treasury to the credit of the State, county, and township

wherein said lands are situated, in proportion to the amount of taxes due to the State, county, and township. By Act No. 141, Pub. Acts 1901, the auditor general and commissioner were authorized to withhold lands when they determined it was not advantageous to open them for entry; and it authorized them to offer for sale the State lands at prices discretionary with them, and provided that the proceeds for any such sale should be accounted for to the State, county, and township in which said lands were situated, *pro rata*, according to their several interests therein, arising from the nonpayment of taxes thereon, as such interest should appear in the office of the auditor general.

We think all of these provisions, taken together, when read in connection with other provisions of the State tax law, to which references need not be given, indicate that the whole theory of the taxing laws is to vest the title in the State, as between itself and the original owner, but for the State, county, and township, in proportion to the several taxes due to each.

In this state of the law, there was enacted, in 1897, section 1323, 1 Comp. Laws, authorizing the land commissioner to adjust and collect for trespasses on lands held by the State for the nonpayment of taxes, and directing that he should pay over the money received by him in satisfaction of such trespasses to the State treasurer, for the benefit of the fund to which it might belong. It is said of this provision by the counsel for the respondents that it contains no direction to pay the sum collected into the treasury for the use of the county, township, and State, and that the result is to pay it into the general fund, and, as no provision is made for paying any portion of it to the county or township, that this shows a legislative intent to treat the proceeds of such adjustment as State property.

We think the burden to maintain such a construction should rest upon the respondents. The legislative purpose to appropriate moneys or property of the county and township to the State ought certainly to be manifest and clear before the courts should hold that that has been ac-

complished.    As we have pointed out, at the time this sale was made to the State it was made to the State for the use of the State, county, and township.    If it should transpire that the entire value of the land consisted in timber, of which it had been denuded, and thereby the rights of the State, county, and township infringed and wholly defeated, a legislative purpose to permit a trustee—if the State be so termed—to appropriate the entire proceeds, even though they might satisfy all the interests of the State, county, and township, is not to be lightly inferred.    We think no such result need follow.    The proceeds are to be paid into the State treasury, into the fund to which they belong.    To what fund do the proceeds belong ?    As the avails of the property of the State, county, and township, we think it clear the fund belongs to. these respective municipalities in the proportion defined by the statute itself.

The respondents' counsel refer to the cases of *Robbins* v. *Barron*, 32 Mich. 36, *Connecticut Mutual Life-Ins. Co.* v. *Wood*, 115 Mich. 448 (74 N. W. 656), and *Allen* v. *Cowley*, 128 Mich. 530 (87 N. W. 620), to sustain the proposition that the title to the land is in the State absolutely.    In all these cases the question was whether, as between the State and the original owner, the title was in the State, and the cases are to be read with reference to that question.    But, notwithstanding these cases, it would not be contended that, as between the county, township, and State, the title was absolutely in the State, so that upon a resale or redemption the rights of the county and township would not be protected.    It is not so contended here; and certainly, where the timber is the chief value of the land, the respective rights of the county and township are just as patent as they are in the land itself.    As to the force and effect of such a sale to the State, and as to the right of the State, as against a wrong-doer, to the avails of the trespass settlement or seizure, we deal with both questions in the case of *Hickey* v. *Rutledge, ante,* 128 (98 N. W. 974).

After this case was fully presented in the main briefs,

the respondents' counsel contended, in a supplemental brief, that, in any view, *mandamus* is not the proper remedy. But we have thought best to deal with this question on its merits, as the case had been fully argued and presented before this question was suggested. Undoubtedly, upon the views herein expressed, the respondents and relator can promptly adjust the questions at issue between them.

As the case is one of public interest, no costs will be awarded.

MOORE, C. J., CARPENTER and HOOKER, JJ., concurred. GRANT, J., took no part in the decision.