## HELIN v. GROSSE POINTE TOWNSHIP.

1. TAXATION—DEFINITION OF "CASH VALUE."

   The words "cash value," as used in the general property tax law, mean the usual selling price that could be obtained at the time of assessment, but not the price that could be obtained at a forced or auction sale (CL 1948, § 211.27).

2. SAME—STATE TAX COMMISSION—FRAUD.

   The action of the State tax commission in respect to the assessment of taxes is final, in the absence of fraud.

3. SAME—STATE LAND OFFICE BOARD—CASH VALUE OF PROPERTY SOLD.

   The State land office board, after no bids were received at so-called scavenger sale, in making an appraisal and sale of property to which the State had acquired absolute title by reason of the nonpayment of taxes, acted as an agent of the several taxing units, including a township as one of them, hence, such township cannot be heard to deny the fact that the price for which a parcel of property was sold by the board was the fair cash value (CL 1948, §§ 211.357, 211.358).

4. SAME—VALUATION—FRAUD.

   A valuation of property by tax assessing officers is necessarily fraudulent where it is so unreasonable that the assessor must have known that it was wrong.

5. SAME—VALUATION—INJUNCTION.

   A plain case for correction by a court is made out where a valuation is purposely made too high through prejudice or a reckless disregard of duty in opposition to what must necessarily be the judgment of all competent persons, or through the adoption of a rule which is designed to operate unequally upon a class and to violate the constitutional rule of uniformity.

6. SAME—INTENTIONAL OVERASSESSMENT—FRAUD.

   Intentional overassessment of property for taxes is fraud.

7. SAME—ASSESSMENT AT VARIANCE WITH UNDISPUTED FACTS—FRAUD.

   An assessment of property for taxes at variance with undisputed facts is fraud upon the rights of the taxpayer.

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 9] 51 Am Jur, Taxation, §§ 697, 701.
[2, 10, 11] 51 Am Jur, Taxation, §§ 723, 724, 745, 770, 771.
[2, 10] Conclusiveness of action of board of equalization on question of fraudulent overvaluation of property. 9 ALR 1284.
[5] 51 Am Jur, Taxation, § 771.
[9] Price paid or received by taxpayer for property as evidence of its value for tax purposes. 160 ALR 684.

8. SAME—TRUE CASH VALUE—FRAUD.

The use of a method of valuation which does not determine true cash values is fraud in law.

9. SAME—ASSESSMENT—CASH VALUE.

Assessment of mansion-type stone dwelling at upwards of $120,-000 by local and State tax-assessing officers for second year after plaintiff had purchased it from the State land office board for $40,000 *held,* under the circumstances, to require conclusion that the property was not assessed at its true cash value.

10. SAME—ASSESSMENT—FRAUD OF ASSESSORS.

An assessment against lands for taxation may be assailed in court if it can be shown that the assessing officers acted fraudulently, as courts have jurisdiction to relieve the burden of such oppression.

11. SAME—COURTS—VALUATION.

Courts cannot substitute their judgment as to the valuation of property for the judgment of the duly constituted tax authorities.

12. SAME—ASSESSMENT—FRAUD—EVIDENCE.

It was not error for trial court to deny tax-assessing authorities' motions to dismiss plaintiff taxpayer's action to recover taxes paid under protest, to admit evidence relating to the purchase price of the property and its appraisal by the State land office board, the adoption of a claimed wrong principle of assessment, and that tending to show discrimination or fraud, where plaintiff had purchased mansion-type dwelling property for $40,000 in 1945, and valuation for taxation purposes fixed in 1947 was upwards of $120,000, testimony disclosed that such property was not readily salable and some like dwellings had been demolished or allowed to revert to State by the owners for nonpayment of taxes because of the low value at which they were salable.

13. SAME—PAYMENT UNDER PROTEST—AMOUNT OF JUDGMENT RECOVERED.

Judgment is ordered entered for entire amount of tax paid under protest, without prejudice to a proper reassessment, where assessment as made was shown to have been constructively fraudulent and circuit judge before whom case was heard without a jury was without power to substitute his judgment for that of the taxing authorities in arriving at a valuation substantially less than that at which they had placed, but more than the amount plaintiff had paid the State land office board slightly over a year theretofore.

Appeal from Wayne; Brennan (Vincent M.), J.

Submitted October 12, 1950. (Docket No. 13, Calendar No. 44,809.) Decided January 8, 1951. Rehearing denied March 1, 1951.

Action by Charles Helin and wife against Grosse Pointe Township and others to recover taxes paid under protest. Judgment for plaintiffs. Defendants appeal. Plaintiffs cross-appeal. Reversed and remanded for entry of judgment for plaintiffs for full amount of taxes paid.

*Shapero & Shapero* (*George H. Heideman* and *Sidney L. Cohn,* of counsel), for plaintiffs.

*Julius L. Berns,* for defendants.

*Amici Curiae:* County of Wayne by *Gerald K. O'Brien,* Prosecuting Attorney, and *Arthur L. Robbins* and *Philip A. McHugh,* Assistant Prosecuting Attorneys; City of Detroit by *Frank G. Schemanske,* Corporation Counsel, *Paul T. Dwyer,* Acting Corporation Counsel, and *Stephen J. Carey* and *John G. Dunn,* Assistant Corporation Counsel; City of Hamtramck by *Leonard Ziskie,* Assistant City Attorney; Village of Grosse Pointe Shores, by *Joseph A. Vance, Jr.,* Village Attorney; City of Ecorse by *Earl E. Montie,* City Attorney; City of Grosse Pointe Park by *Pierre V. Heftler,* City Attorney; City of Grosse Pointe Farms, by *Henry R. Maurer,* City Attorney; Rural Agricultural School District No. 1, Grosse Pointe Township by *Glenn M. Coulter;* City of Grosse Pointe by *Albert E. Meder,* City Attorney; City of Dearborn by *Dale H. Fillmore,* Corporation Counsel; City of Highland Park by *Earl B. Young,* City Attorney and *John N. Canavan,* Assistant City Attorney; and City of River Rouge by *Maxton R. Valois,* City Attorney.

BUSHNELL, J. Plaintiffs Charles Helin and Lempi Helin, his wife, reside in the village of Grosse Pointe

Park and are the owners of lots 23 and 24, Windmill Pointe subdivision of private claim 696, and part of private claims 126 and 127, 379 and 570. The Helins purchased this property on land contract from the State land office board in 1945 for $40,000. It is adjacent to that involved in *Moran* v. *Grosse Pointe Township,* 317 Mich 248, and has a 200-foot frontage on Lake St. Clair and a depth of 400 feet. A 55 x 105-foot mansion-type stone dwelling and a 4-car garage with 5 rooms on its second floor are located on the property. The house has 7 rooms and 2 lavatories on the first floor; 8 bedrooms and 6 bathrooms on second floor; and 5 rooms and 2 bathrooms on third floor. It was built in 1924 at a cost of $250,000. The original owner paid about $50,000 for the land.

In 1943, when it was assessed at about $135,000 the then owner permitted his title to revert to the State for the nonpayment of approximately $15,000 accumulated taxes. There were no bids at the public auction, held under section 7 of the State land office board act (PA 1937, No 155, as amended [CL 1948, § 211.351 *et seq.* (Stat Ann 1950 Rev § 7.951 *et seq.*)]).

The property was appraised at $60,000 on November 6, 1944, under the authority of section 8 of the act (CL 1948, § 211.358 [Stat Ann 1950 Rev § 7.958]). No offers were received, although it was advertised and listed with brokers. On April 23, 1945, Helin made an offer of $35,000, which was not accepted. The property was thereafter reappraised at $40,000, and again offered for sale. On May 16th the State accepted Helin's offer in this amount.

The proceeds, less commissions, were distributed, 23.58 per cent. of which went to the treasurer of defendant township. Thereafter, defendant township placed the property on the tax rolls at an assessed valuation of $133,270. Helin made timely protest, was accorded a hearing before the board of

review and, upon receiving no relief, appealed to the State tax commission. On November 4, 1947, the commission reduced the assessed valuation to $123,-770. The adjusted tax of $2,894.98 was paid under protest and suit was brought to recover claimed excess taxes.

Trial by jury was waived. The trial judge held that the fair cash value of the property, as of the date of assessment, was not more than $50,000, and that plaintiff was entitled to recover payments on the assessed value in excess of $50,000.

Defendant township appealed from a judgment in the sum of $1,879.34. Plaintiffs took a cross appeal on the ground that the court erred in failing to render judgment for the entire amount of the 1947 taxes paid under protest.

Appellants' statement of questions involved is directed to the trial court's denial of their motion to dismiss, claimed improper admission of certain testimony, denial of a motion to strike such testimony, and the establishment by the trial court of its own valuation of the property in question and the rendering of a judgment based thereon.

Plaintiffs and cross-appellants claim discrimination because other property in the taxing district was assessed at less than 50 per cent. of its cash value. They argued that a valuation of their property, based entirely upon cost of reproduction less depreciation and obsolescence, resulted in this instance in an assessment so excessive and constructively fraudulent as to make it illegal. They also urge that they are entitled to judicial remedy after exhausting all administrative remedies, that there was no error in the admission of testimony, and that the judgment, if not proper, should be increased to include the full amount of the taxes paid. The county of Wayne and city of Detroit were granted leave to file a brief *amici curiae*.

The testimony indicates that the area in which the property is located is the most highly restricted in the community, and that homes of this type, although at one time quite desirable, are no longer being built and are generally considered to be presently unsalable. Helin testified that, because of the expense of upkeep, he is only able to use 8 or 10 rooms, and that these cost $250 per month to heat.

The former owner, Herbert V. Book, testified that he was unable to obtain any tax relief and made every effort to sell his property. He let it go to tax sale in 1943 because he could not obtain anything for his equity, although the property was free and clear of incumbrances, except the unpaid taxes.

The record contains exhibits in tabulated and chart form, prepared by a broker who sold 184 parcels in the area between July, 1944, and May, 1946. They show the relationship between sale prices and assessed valuations of these parcels. These exhibits indicate that in the 4 municipalities in Grosse Pointe township, i.e., Grosse Pointe Park, Grosse Pointe Farms, Grosse Pointe Shores, and Grosse Pointe Woods, the assessed valuations of improved property averaged only 52 per cent. of their sales prices. The testimony of another broker, who sold 26 parcels in 1947, indicates that the assessed valuations of those parcels averaged 38.6 per cent. of sales prices.

An appraiser for the State land office board testified that on November 6, 1944, when he appraised the property at $60,000, he had in mind the statute relating to tax scavenger sales, which required such appraisal to be at the highest price obtainable. When he learned that neither the board nor its agents were able to sell the property at this price, he subsequently appraised it at $40,000. believing that to be the highest price then obtainable.

In support of its assessed valuation, defendant township produced the testimony of Albert E. Champney, director of the Wayne county bureau of taxation. Champney testified that all of the townships in the county of Wayne employ the basic method of assessment that the bureau had established and recommended, with some variations in its application in various areas. These are adjusted through an equalization process by the county board of supervisors.

The system employed is based upon a land value map for each district. The assessing officer arrives at his judgment of the unit values of land for each area, with allowances for depth and variations in size. Champney stated that the assessment level in Grosse Pointe township is at present 20 per cent. below the equalization level applied in the county of Wayne.

The system provides for division of structures into various classes, with a separate class for mansion-type houses. Various factors are used for differences in area, number of stories, and type of construction. The schedule developed in the years 1936 to 1939, as applied to mansion-type homes, includes a substantial allowance for obsolescence. It reflects about 50 per cent. of the reproduction cost from 1936 to 1939. In addition, an obsolescence formula, devised by the Michigan State tax commission, is applied to residential luxury-type homes. This, he explained, is a formula which contemplates an increased rate of obsolescence, depending upon total value, and ranges from 10 to 50 per cent. Based upon the original construction cost of $250,000 in 1924 and 1925, this formula produced a total reproduction cost of $113,814 for the buildings before depreciation. Champney added that the assessment made by the township supervisor was exactly the amount that the bureau recommended in 1947.

James McMahon, an examiner for the State tax commission, testified that, in reassessing this property, he recommended a land value of $51,330 and a building value of $72,440, which totaled $9,500 less than the township valuation. This reduction in building value was the result of an increase in the obsolescence factor. He stated that the formula used for mansion-type buildings is uniformly applied by the commission to all appeals of this type from Wayne county. He admitted that the problem is difficult because "sales of so-called mansion-type property do not always reflect the true cash value of those properties." McMahon estimated that construction costs in 1949 were double those of 1924 to 1925, and, if applied to the Helin property, this would result in a reproduction cost of $600,000 to $650,000.

As stated in *Moran* v. *Grosse Pointe Township,* 317 Mich 248, 254, the words "cash value" as defined by CL 1929, § 3415 (CL 1948, § 211.27 [Stat Ann 1950 Rev § 7.27]), is the usual selling price that could be obtained at the time of assessment, but not the price that could be obtained at a forced or auction sale. See, also, *Twenty-Two Charlotte, Inc.,* v. *City of Detroit,* 294 Mich 275, 283.

The *Moran Case* contains a discussion of some of the phases of the problem presented by the instant appeal. Decision there would control here were it not for the fact that the *Moran Case* was not one where the protesting taxpayer purchased property from the State land office board after it had been appraised by that State agency. We also note the following at page 253 in the *Moran Case:*

"At the trial of the case, attorney for plaintiff in his opening address made similar charges as heretofore stated, but when pressed for an answer as to whether there was any fraud in the actions of the board of review or the State tax commission, his

answer was in the negative, qualified, however, by the statement that it was fraud to the extent that the respective bodies followed the result arrived at by the supervisor and so vehemently denounced by plaintiff.  The trial court after carefully considering the charges in the declaration as amplified by counsel's opening statement entered an order of dismissal."

Later in the opinion at page 256 appears this statement:

"The other action of the supervisor complained of is that other property in the township not having the advantage of fronting on the lake shore was underassessed.  Plaintiff claims that this resulted in illegal discrimination.  We have not the facts before us.  Plaintiff conceded that neither the board of review nor the board of State tax commissioners acted fraudulently.  In fact, she concedes that the latter body at some time had recommended a reduction and the recommendation was carried out by the supervisor.    *    *    *

"In the absence of fraud, the determination of the State tax commission was final."

However, in the matter now before us plaintiffs have never receded from their original position—that the action of the taxing authorities, based upon a wrong principle, resulted in an "excessive and constructively fraudulent" assessment.

Appellees argue that the State land office board acts as the agent of the taxing units for the purpose of obtaining the highest price out of which such taxing units could recover the delinquent taxes in whole or in part.  The conclusion is drawn that, since the township did not object to the price at which the board proposed to sell the property, the board's determination that $40,000 was the true cash value of the property thus became binding upon the township.

No authority is cited in support of this proposition. It was foreshadowed in *School District No. 8 of the Township of Ecorse* v. *State Land Office Board,* 313 Mich 560, 566. There, the argument was made that in *Baker* v. *State Land Office Board,* 294 Mich 587, this Court held that the State became the absolute owner. The Court, however, said that the *Baker Case* "dealt solely with the rights of former owners and delinquent taxpayers. Those of taxing units, as here presented, have not as yet been adjudicated." We held that the State land office board act did not change the rule in *Alcona County Board of Supervisors* v. *Auditor General,* 136 Mich 130, that "the whole theory of the taxing laws is to vest the title in the State, as between itself and the original owner, but for the State, county, and township, in proportion to the several taxes due to each."

This accepted rule requires the conclusion that when the State land office board appraised and sold the property in question for $40,000, it was, as required by statute, sold "to the best advantage." (Section 8, State land office board act.) The State land office board thus acted as an agent for the township to the extent of 23.58 per cent. of the purchase price. The township cannot be heard to deny the fact that this was a fair cash value.

All of the circumstances leading up to this sale indicate that there was no demand for this type of property. It was a drug on the market, and more or less unsalable.

The testimony regarding sales of homes comparable to the Helin property in the vicinity can be briefly summarized as follows:

The Oscar Webber home, said to be larger and more valuable, was sold in 1949 for $45,000. Its reproduction cost was estimated at over $200,000. The Osius home, smaller, more desirable and better located, was listed with brokers for 10 or 15 years,

and finally sold in September of 1946 for $24,500. The Zimmer home, more modern, and in a better location, was sold in 1942 or 1944 for $40,000. The Hiram Walker home, said to be one of the finest along the lake shore, which could not be duplicated today for $300,000, was sold for $22,000. The Rankin Peck property, located on the lake shore east of the Grosse Pointe Yacht Club, with a frontage of 420 feet on the lake (more than twice the frontage of the Helin property) was sold in 1942 for $38,000. The Ross Judson property, originally costing $425,000, was sold for $75,000. The Fred Ford property was offered in 1941 and 1942 at $50,000, but attracted no buyers. The Alger home, which is said to be located on the finest lake frontage in the township, was offered in 1948 for $25,000, more than the value of the land. The Howard Palmer home originally cost $160,000, was offered for sale in 1942 for $20,000, and subsequently sold for $14,000. The E. L. Ford home, larger than the Helin house, with land 4½ times deeper and 1½ times more lake frontage, was demolished in 1942, though still serviceable, it having been previously sold for $30,000. The Doris McMillan-Pitman home was offered for sale for a long period and eventually was demolished. The Sheldon home, larger than the Helin's, was offered for $30,000, and finally demolished to avoid taxes on the building.

"A valuation is necessarily fraudulent where it is so unreasonable that the assessor must have known that it was wrong. If the valuation is purposely made too high through prejudice or a reckless disregard of duty in opposition to what must necessarily be the judgment of all competent persons, or through the adoption of a rule which is designed to operate unequally upon a class and to violate the constitutional rule of uniformity, the case is a plain

one for the equitable remedy by injunction." 4 Cooley on Taxation (4th ed), § 1645.

Intentional overassessment is fraud. *Sloman-Polk Co.* v. *City of Detroit,* 261 Mich 689 (87 ALR 1294). In the eyes of the law an assessment at variance with undisputed facts is a fraud upon the rights of the taxpayer. *S. S. Kresge Co.* v. *City of Detroit,* 276 Mich 565, 571 (107 ALR 1258).

The use of a method of valuation which does not determine true cash values is fraud in law. *Newport Mining Co.* v. *City of Ironwood,* 185 Mich 668.

An examination of the testimony and the exhibits in support thereof requires the conclusion that plaintiffs' property was not assessed at its true cash value.

An assessment against lands for taxation may be assailed in court if it can be shown that the supervisor or board of review acted fraudulently. *City of Birmingham* v. *Oakland County Supervisors,* 276 Mich 1.

Courts have jurisdiction to relieve the burden of such oppression. *Twenty-Two Charlotte, Inc.,* v. *City of Detroit,* 294 Mich 275, 282.

The property in question is restricted to use for a single residence. It may not be used for an apartment house, multiple residence, or institutional purposes. Taxes, heating, repairs and upkeep, and the large amount of help required to properly maintain it, make the cost of living in such a home prohibitive, except possibly for a very limited number of people. As the record shows, some of the owners of similar homes in the subdivision have either torn down the houses or permitted them to be sold for taxes, or sold them for but a small fraction of their original cost. The restrictions mentioned are largely responsible for the destruction of the larger part of the value of the property and should result in a very material reduction in assessments if they are

to be made in a legal manner. The present action, however, is based on what amounts in law to a fraudulent assessment.

The trial judge substituted his judgment for that of the taxing authorities in arriving at a valuation of $50,000.

"Courts cannot substitute their judgment as to the valuation of property for the judgment of the duly constituted tax authorities." *S. S. Kresge Co.* v. *City of Detroit, supra,* 572.

In the light of the factual recitals in this opinion and the law applicable thereto, as herein stated, the trial judge did not err in denying defendants' motions to dismiss. Nor did he err in overruling the objections to the admissibility of evidence relating to the purchase price of the property and its appraisal by the State land office board, the adoption of a claimed wrong principle of assessment, and that tending to show discrimination or fraud.

The judgment entered for the difference between the tax paid and the rate computed on a valuation of $50,000 must be vacated and one entered for the entire amount of the protested tax paid, without prejudice to a proper reassessment.

The judgment is vacated and the cause is remanded for the entry of a judgment in accordance with this opinion. Costs to appellees.

REID, C. J., and BOYLES, NORTH, DETHMERS, BUTZEL, CARR, and SHARPE, JJ., concurred.