**FRANKEN INVESTMENTS, INC., a Michigan corporation, FranKen Sub-1, Inc., a Michigan corporation, and FranKen Sub-2, a Michigan corporation, Plaintiffs,**

**v.**

**THE CITY OF FLINT, a municipal corporation, and the City of Lansing, a municipal corporation, Defendants.**

No. 00–CV–74682–DT.

United States District Court, E.D. Michigan, Southern Division.

Aug. 30, 2002.

Elias Mauwad, Mauwad & Mauwad, Southfield, MI, for plaintiffs.

Michael J. Gildner, Simen, Figura, Flint, MI, for City of Flint, defendant.

Jack C. Jordan, James D. Smiertka, City Attorney, Lansing City Attorney's Office, Lansing, MI, Brian W. Bevez, City Attorney's Office, Lansing, MI, for City of Lansing.

## MEMORANDUM OPINION AND ORDER

HOOD, District Judge.

This matter is before the Court on the parties' cross-motions for summary judgment, filed October 1, 2002. Response Briefs have been filed by both parties, and a hearing was held on November 20, 2001. For the following reasons, Defendants' Motion is **GRANTED** and that of Plaintiffs **DENIED**.

### I. FACTS

The Plaintiffs, FranKen Investments, Inc., and its two wholly owned subsidiaries FranKen Sub–1, Inc. and FranKen Sub–2, Inc., are involved in the business of investing in real estate tax liens. Their principal members are Kenneth Frantz and Frank Simon, two attorneys. In 1998 and 1999, the Plaintiffs purchased real estate tax liens for properties located in various counties throughout the state. This lawsuit involves the purchase of lands located in the Cities of Flint and Lansing ("Defendant Cities"), which are in Genesee and Ingham counties, respectively. Plaintiffs did not inspect any of the lands they purchased.

Under the relevant version of the General Property Tax Act of Michigan, MICH. COMP. LAWS. ANN. 211.60 *et seq.*, governmental entities such as Defendant Cities could recover delinquent taxes by selling tax liens at an annual tax lien sale usually held the first Tuesday in May. Cities would transfer all delinquent tax liens to the county in which they sit, and the county would then conduct the tax lien sale. Individual investors would "bid" on the tax liens on the properties, and in exchange for payment of the delinquent taxes they would receive a tax lien entitling them to repayment of their individual amount, plus interest at a rate of 15% or

50% per annum, depending upon circumstances.

According to Plaintiffs, Defendant Cities "have engaged in a custom and policy of intentionally and consistently deceiving the investors purchasing tax liens at the annual sale by knowingly reporting to the Counties 'delinquent taxes' which inappropriately include some of the Cities' municipal non-tax 'special assessments' and 'special bills' as real estate taxes." Complaint ¶ 15. Specifically, Plaintiffs argue that Defendant Cities have included demolition charges in their calculation of the amount of delinquent taxes owed in violation of the statute. According to Defendant Cities, the tax liens transferred to the counties would be itemized such that the county could ascertain which delinquent amounts were for property taxes, and which amount were for other charges to the land. Defendant Cities claim that the county would publish a catalog listing all properties for sale, but aggregate all amounts into one sum.

Plaintiffs have produced a letter from the Assistant City Attorney of the City of Lansing dated March 1, 2000, to the Ingham County Treasurer. The letter states in pertinent part:

> Please be advised that the City of Lansing has discovered an error in the reported assessments for the properties listed on the attached sheet. *The amounts listed for the years designated are not the type of special assessment normally considered as capital improvements and should not have been added to the delinquent tax roll.* Therefore, please remove them and reissue the tax certificates so that they reflect the correct redemption amounts.

Ps.' Ex. 1 (emphasis added). According to Plaintiffs, this letter was written as a result of a complaint by Plaintiffs' Principal, Kenneth Frantz, regarding demolition costs.

Plaintiffs have asserted various theories of recovery from the Cities of Flint and Lansing in the amounts of $110,576.16 and $37,080.05, respectively, plus costs, loss of interest at the relevant percentage rate and attorneys fees. Count I alleges violations of 42 U.S.C. § 1983 and the Headlee Amendment. Count II requests declaratory relief under 28 U.S.C. § 2201. Count III, which has been voluntarily dismissed, alleges breach of contract, and Count IV alleges unjust enrichment. All parties have moved for summary judgment.

## II. STANDARD OF REVIEW

Rule 56(c) states that summary judgment should be entered only where "the pleadings, depositions, answers to the interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The presence of factual disputes will preclude granting of summary judgment only if the disputes are genuine and concern material facts. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute about a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

Although the Court must view the motion in the light most favorable to the nonmoving party, where "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Moreover, the court need not accept as true legal conclu-

sions or unwarranted factual inferences. *Hoeberling,* 49 F.Supp.2d at 577.

Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See Celotex Corp.,* 477 U.S. at 322–23, 106 S.Ct. 2548. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Id.* A court must look to the substantive law to identify which facts are material. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

## III. ANALYSIS

### A. Mich. Comp. Laws Ann. § 211.60 et seq.

▮ The crux of Plaintiffs' argument is that the cities of Flint and Lansing unlawfully included demolition costs in their calculations of delinquent taxes. Attempting to predict Defendants' arguments, Plaintiff disputes the categorization of demolition costs as "special assessments." Special assessments are improvements to the land, the costs of which are recoverable by the cities not as taxes, but as remuneration for the cost incurred to increase the property value. Claiming that demolitions do not "increase" the value of the land, Plaintiffs contend that they should not be included in the delinquent-tax calculation.

A review of Defendants joint motion for summary judgment, however, reveals that the cities do not contest the fact that demolition costs do not raise property value and therefore are not special assessments recoverable in the yearly tax sale. Instead, Defendants argue that *they* do not include demolition costs in their calculation of delinquent taxes, but that the *counties*

do. The cities admit that the liens on the property do, in fact, include "costs incurred by the City for demolition of structures on the parcels, costs incurred by the City for mowing grass, or other costs related to the removal of blighting conditions on the parcels." Defendants contend, however, that they "list these expenses separately in its records and reported these items to the County separately as well." Defendants claim that it is the counties, not the cities, that combined these amounts and reported the aggregate in the catalog published in mid-March. "If that practice is unlawful," Defendants argue, "the County alone is responsible for it." Plaintiffs do not counter this argument.

MICH. COMP. LAWS ANN. § 211.61 sets forth procedures relative to notice and lists of lands to be sold. Section 211.61 states that the county clerk in each county in which lands are to be sold are to prepare and file a petition "addressed to the circuit court for the county stating by appropriate reference to lists or schedules annexed to the petition a description of those lands in the county upon which [delinquent taxes exist]." Section 211.61 further requires that the petition "be in a substantial record book, with the lists of lands and taxes annexed following the petition in the book," and that the record, to be known as the "tax record," "be ruled with appropriate columns, including 1 containing a description of the lands and other columns as the state treasurer considers necessary." Of particular relevance is the requirement that the description found within the tax record detail all "charges adjudged against the lands." Demolition costs are "charged against the land" if the requirements of MICH. COMP. LAWS. ANN. § 124.541 are met. It appears, therefore, that § 211.61 not only allows cities to submit the amount of delinquent taxes owed, but also contemplates the submission of demolition costs.

Under this theory, the City Defendants had authority to submit demolition costs to their respective counties when submitting their list of properties with delinquent taxes.

Section 124.541(5) states that "the cost of the demolition ... shall be reimbursed to the city ... by the owner or party in interest in whose name the property appears." Section 124.541(6) provides for notice of the amount of the costs to "[t]he owner or party in interest in whose name the property appears upon the last local tax assessment records..." Section 124.541(6) further states that failure to pay the demolition costs results in a lien against the property, and that a properly recorded "lien for *the cost shall be collected and treated in the same manner as provided for property tax liens under [§§ 211.1 to 211.157]*." *Id.* (emphasis added). Because § 211.60 *et seq* allows for tax liens to be recovered via the tax sale outlined in that section, arguably, demolition costs can also be recovered thereunder. The Court grants Defendants' motion for summary judgment on this issue.

## B. The Title–Object Clause of the Michigan Constitution

■ Plaintiffs also argue that MICH. COMP. LAWS ANN. § 125.541 is an inappropriate vehicle to recover demolition costs because the section violates the Title–Object Clause of the Michigan Constitution. Although Defendants have not responded to this argument, the Court addresses it.

■ The Title–Object Clause, which provides in relevant part that "[n]o law shall embrace more than one object, which shall be expressed in its title," MICH. CONST.1963, art. 4, §§ 24, is not violated. In determining the validity of a challenge to a statute on the basis of an alleged violation of the Title–Object Clause, the test is whether the title of the act gives the Legislature and the public fair notice of the challenged statutory provision. *Knauff v. Oscoda County Drain Com'r,* 240 Mich.App. 485, 496, 618 N.W.2d 1 (2000) (citing *Ray Twp. v. B & BS Gun Club,* 226 Mich.App. 724, 728–729, 575 N.W.2d 63 (1997)). The title of the housing law of Michigan states:

> AN ACT to promote the health, safety and welfare of people by regulating the maintenance, alteration, health, safety, and improvement of dwellings; to define the classes of dwellings affected by the act, and to establish administrative requirements; to prescribe procedures for the maintenance, improvement, or demolition of certain commercial buildings; to establish remedies; to provide for enforcement; to provide for the demolition of certain dwellings; and to fix penalties for the violation of this act.

MICH. COMP. LAWS ANN. § 125.541(6) states that

> The owner or party in interest in whose name the property appears upon the last local tax assessment records shall be notified by the assessor of the amount of the cost of the demolition, of making the building safe, or of maintaining the exterior of the building or structure or grounds adjoining the building or structure by first class mail at the address shown on the records. If the owner or party in interest fails to pay the cost within 30 days after mailing by the assessor of the notice of the amount of the cost, the city, village, or township shall have a lien for the cost incurred by the city, village, or township to bring the property into conformance with this act. The lien shall not take effect until notice of the lien has been filed or recorded as provided by law. A lien provided for in this subsection does not have priority over previously filed or recorded liens and encumbrances. The lien for the

cost shall be collected and treated in the same manner as provided for property tax liens under the general property tax act, Act No. 206 of the Public Acts of 1893, being sections 211.1 to 211.157 of the Michigan Compiled Laws.

According to Plaintiffs, this portion of the act violates the Title–Object Clause "because the subjects of demolition costs and property tax laws are diverse and have no bearing to each other."

The title of the housing law of Michigan clearly indicates in intent to establish remedies and enforcement mechanisms for violations of regulations concerning "the maintenance, alteration, health, safety, and improvement of dwellings." Assessment of the expenses incurred for demolition is a remedy; utilizing the recovery procedures outlined property tax laws is an enforcement mechanism. As in *Knauff*, "[a] review of the text of the statute reveals that the body of the statute parallels the scope of the title. Plaintiffs have failed to explain how the trial court 'searched the statute for the meaning of the preamble' of the [housing law of Michigan]." Accordingly, this court finds no Title–Object Clause violation. Defendants motion for summary judgment is granted as to this claim.

### C. Headlee Amendment

■ Plaintiffs claim that "Defendant Cities were prohibited from levying the demolition costs as special assessment tax (sic) which is not authorized by law pursuant to the Headlee Amendment." The Headlee Amendment states in pertinent part:

> Sec. 31 Units of local government are hereby prohibited from levying any tax not authorized by law or charter when this section is ratified or from increasing the rate of an existing tax above that rate authorized by law or charter when this section is ratified, without the ap-

proval of a majority of the qualified electors of that unit of local government voting thereon.

Mich. Const. (1963) art. 9, § 31.

■■ Defendants argues that the Cities have been authorized by law to impose these taxes pursuant to M.C.L. § § 125.541. This Court agrees. Additionally, there is an argument that demolition costs do not constitute a "tax," but is instead a "fee" charged for the demolition service. "There is no bright-line test for distinguishing between a valid user fee and a tax that violates the Headlee Amendment." *Bolt v. City of Lansing*, 459 Mich. 152, 161, 587 N.W.2d 264 (1998). However, there are three factors a court considers to determine whether a charge constitutes a "tax" or a "fee." First, a user fee must serve a regulatory purpose rather than a revenue-raising purpose. *Id.* at 161, 587 N.W.2d 264. Second, user fees must be proportionate to the necessary costs of the service. *Id.* at 161–62, 587 N.W.2d 264. The third criterion is voluntariness. *Id.*

■ Taxes have a primary purpose of raising revenue. *Id.* at 161, 587 N.W.2d 264. Section 125.541's stated purpose is to protect the health and welfare of citizens. Plaintiffs admit as much. Ps.'s Br. at 13. The recovery portion of the statute has a primary purpose of providing for the *reimbursement* to the city for expenses it has incurred in enforcing the housing act. In this way, it is a "fee." *Id.* ("Generally, a 'fee' is 'exchanged for a service rendered or a benefit conferred, and some reasonable relationship exists between the amount of the fee and the value of the service or benefit.' "). Therefore, the analysis set out in Section A, *supra*, applies equally to Plaintiffs' Headlee Amendment argument. That is, demolition cost liens can be collected and treated in the same manner as provided for property tax liens

under § 211.60. The mere fact that demolition costs may be collected in the same way as a tax does not thereby convert the demolition cost to a tax. *See Ripperger v. City of Grand Rapids,* 338 Mich. 682, 686, 62 N.W.2d 585 (1954) ("No one can be compelled to take water unless he chooses, and *the lien, although enforced in the same way as a lien for taxes, is really a lien* for an indebtedness, like that enforced on mechanics' contracts, or against ships and vessels." (Emphasis added)).

### D. 42 U.S.C. § 1983

Plaintiffs claim that Defendant Cities have violated their Fourteenth Amendment rights to procedural and substantive due process. Plaintiffs also argue that Defendants' actions violated their equal protection rights under the Fourteenth Amendment. Finally, Plaintiffs claim that Defendant Cities actions' have effectuated a taking of their property in violation of the Fifth Amendment, as made applicable to the states by the Fourteenth Amendment.

### 1. Taking

[9, 10] The Fifth Amendment to the United States Constitution states that "[n]o person shall be deprived of life, liberty or property, without due process of law, nor shall private property be taken for public use, without just compensation." To establish that governmental action constitutes a taking in violation of the Fifth and Fourteenth Amendments to the United States Constitution, Plaintiffs must demonstrate that the Cities' actions placed an impermissible burden on their property. *Amen v. City of Dearborn,* 718 F.2d 789, 794 (6th Cir.1983). Defendants contend that Plaintiffs cannot prevail on this claim because the Cities did not place any impermissible burdens on the properties that they purchased.

Here, Plaintiffs argue that "[t]he Defendant Cities do not have valid authority to transfer these demolition costs to the Counties." In Plaintiffs' estimation, "[b]ecause of the invalid transfer of the demolition costs to the Counties for tax sales for recoupment, the Defendant Cities have caused a taking in the Plaintiff's (sic) personal property (money) that the Cities are not entitled to." This Court disagrees with Plaintiffs' contention. "A taking does not occur merely because the governmental action burdens or restricts some particular right or interest in a parcel of land; rather, before a taking occurs, the government must deny the owner all or an essential use of his property." *Amen,* 718 F.2d at 796. That has not occurred here. Plaintiffs' takings claim fails for this reason.

### 2. Procedural Due Process

Procedural due process principles protect persons from deficient procedures that lead to the deprivation of cognizable liberty interests. *Bartell v. Lohiser,* 215 F.3d 550, 557 (6th Cir.2000) (citing *Mathews v. Eldridge,* 424 U.S. 319, 333–34, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)). To establish a procedural due process claim under § 1983, a plaintiff must demonstrate that she was deprived of a constitutionally protected life, liberty or property interest without due process of law. *Hahn v. Star Bank,* 190 F.3d 708, 716 (6th Cir.1999). In this circuit, a party may maintain a procedural due process § 1983 case in federal court if "he alleges and proves that there was a constitutional violation under color of law and: 1. The state did not have a remedy; or 2. The state had a remedy but it was deemed inadequate; or 3. The state had an adequate remedy in form, both procedurally and in damages, but the state did not apply it or misapplied its remedy." *Id.* (citing *Haag v. Cuyahoga County,* 619 F.Supp. 262, 278–79 (N.D.Ohio 1985), *aff'd.*

798 F.2d 1414, 1986 WL 17279 (6th Cir. 1986)).

### i. Constitutionally Protected Property Interest

Defendants claim that "Plaintiff in this case was a potential purchaser of property. Nowhere does the Constitution or state law require that the City provide Plaintiff with the information he now demands or in the manner he prefers it." Defendants argue, "the Plaintiff lacks a property interest in this information and cannot maintain the procedural due process claim against that interest." Plaintiffs claim that they have been deprived of their money via an unlawful "taxing" scheme operated by the Defendant Cities. As the Supreme Court has impliedly recognized that money is a protected property interest. *See Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 571–72, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) ("The property interests protected by procedural due process extend well beyond actual ownership of real estate, chattels, or money."). Plaintiffs, therefore, have properly identified a protected property interest.

### ii. Notice & Opportunity to be Heard

Plaintiffs further claim that "there was no notice afforded to the Plaintiffs that demolition costs were being added or transferred to the Counties for recoupment." Defendants counter by noting that "[t]he City's records distinguish between delinquent taxes and other expenses related to the parcels," and that "[t]hat information is available by telephone, facsimile or in person to those who request it." Because Plaintiffs never requested the information, suggest Defendant Cities, they cannot be heard to claim that they lacked notice. There is no indication whether Defendant Cities publish or otherwise announce that they maintain these records and that they are available to entities such as Plaintiffs.

In determining which procedural protections are appropriate for a particular situation, the court considers the governmental and private interests that are affected. *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1069 n. 5 (6th Cir.1998) (citing *Mathews v. Eldridge*, 424 U.S. 319, 334, 96 S.Ct. 893, 47 L.Ed.2d 18, (1976)). The courts must consider three distinct factors: (1) the private interests that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Id.* at 335, 96 S.Ct. 893. An analysis of these three factors reveals the following: (1) that Plaintiffs claim a private interest in their money; (2) that Defendant Cities have articulated no interest in depriving Plaintiffs thereof; and (3) that the current procedure involves a high risk of erroneous deprivation. Evidence of this last conclusion is Plaintiffs' Exhibit 1, which details the City of Lansing's mistaken inclusion of non-special assessments (e,g., demolition costs) in its delinquent tax report to the county.

It should be noted, however, that the discussion in Section A, *supra*, regarding the cities' statutory authority to recover demolition costs in the same manner as they recover property taxes, as well as the discussion of the description found in the tax record, supports the proposition that Plaintiffs had sufficient notice that demolition costs could/would be recouped in the tax lien sale. Businesses are deemed knowledgeable of the laws affecting their enterprise. *Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 384, 68 S.Ct. 1, 92 L.Ed. 10 (1947). "Without question, the

imputation of knowledge by virtue of publication in the Statutes at Large 'is something of a fiction . . . [;]' however, it is a fiction 'required in any system of law[.]' " *Neuser v. Hocker*, 140 F.Supp.2d 787, 801 (W.D.Mich.1999) (citing *United States v. R.L.C.*, 503 U.S. 291, 308, 112 S.Ct. 1329, 117 L.Ed.2d 559 (1992) (concurring opinion of J. Scalia)). Applying that fiction here, Plaintiffs had constructive notice of MICH. COMP. LAWS ANN. § 125.541.

### iii. State Remedies

 The Supreme Court has limited the use of § 1983 by holding that in cases involving deprivation of property without due process, a cause of action under § 1983 is unavailable if there exists a "state remedy that comports with procedural due process." *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420, (1981); *Braley v. City of Pontiac*, 906 F.2d 220, 225 (6th Cir.1990). Under *Parratt*, where pre-deprivation process is impractical and adequate post-deprivation remedies are available, plaintiff is relegated to the available state remedies. Although Defendants have not demonstrated that pre-deprivation process is impractical in this instance, they cite to *Swales v. Ravenna Township*, 989 F.Supp. 925 (N.D.Ohio 1997), for the latter proposition. Specifically, Defendants asserts that Plaintiffs' § 1983 claim for procedural due process should be dismissed because they have not demonstrated that they lack state remedies.

Plaintiffs respond to this argument by voluntarily dismissing their implied contract claim and stating that their unjust enrichment claim is not a tort remedy but an equitable remedy. In Plaintiffs' view, therefore, *Swales* is inapplicable. Plaintiff is incorrect. The Supreme Court in *Parratt* spoke of available state *remedies*, not just state *torts*. Although *Swales* and *Parratt* involved a situation in which the plaintiff had alternative tort theories available to him, *Parratt* does not require this limitation. Plaintiffs' continued assertion of their unjust enrichment claim acknowledges their recognition that they have an adequate state *remedy* available to them. *See, e.g., Reich v. Beharry*, 686 F.Supp. 533, 535 (W.D.Pa.1988) ("In addition to the due process claim against the County, plaintiff asserts pendent state claims for breach of contract and unjust enrichment. These are clearly adequate post-deprivation remedies which are available to plaintiff."). Moreover, the court is unable to ascertain whether any administrative remedies exist to remedy Plaintiffs' situation. *See, e.g., Mansfield Apartment Owners Ass'n v. City of Mansfield*, 988 F.2d 1469, 1475–76 (6th Cir.1993) (stating that "the Mansfield Water Division Regulations provided plaintiffs with the right to a hearing regarding their objections to their water bills."). While Plaintiffs correctly note that *Jones v. Powell*, 462 Mich. 329, 612 N.W.2d 423 (2000), precludes an action for damages against municipalities under the *Michigan Constitution*, they have not demonstrated the nonexistence of other *state remedies* exist to redress Plaintiffs' claim. For these reasons, Plaintiffs' procedural due process claim is dismissed.

### 3. Substantive Due Process

 Substantive due process provides that, irrespective of the constitutional sufficiency of the processes afforded, government may not deprive individuals of fundamental rights unless the action is necessary and animated by a compelling purpose. *Bartell*, 215 F.3d at 557–58 (citing *Washington v. Glucksberg*, 521 U.S. 702, 721, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997)). Plaintiffs claim that "the Cities know that demolition costs cannot be transferred to the County under Michigan law, but have been disguising the demolition costs by attaching it to the outstanding taxes which are unconscious, shocking

and oppressive to the public." As stated previously, the Defendant Cities were authorized to assess the demolition costs in this case. Accordingly, the Court finds no conduct that a reasonable person would consider "shocking to the conscience." Plaintiffs' arguments to the contrary unpersuasive. Defendants' motion for summary judgment as to this claim is granted.

### 4. Equal Protection

The equal protection clause of the Fourteenth Amendment protects property interests by requiring legislative classifications adversely affecting the property interests of a class to be rationally related to a legitimate legislative goal. *Ohio Inns, Inc. v. Nye,* 542 F.2d 673, 680 (6th Cir. 1976). Plaintiffs' Amended Complaint states that the Defendants "have carried out a denial of Plaintiffs' equal protection by stating an amount of delinquent taxes which is grossly disproportionate to the actual lien on the land on tax sales and created a class of de facto taxes which are unconstitutional and invalid under the law." Defendants argue that, even assuming their truth, Plaintiffs' statements "do not support an equal protection claim because they do not show that the cities treated Plaintiff differently than others similarly situated." Defendants position is correct, and Plaintiffs' own arguments defeat its equal protection claim.

Plaintiffs have not established the existence of two groups similarly situated treated differently by the Defendant Cities. To the contrary, Plaintiffs argue that the Defendant Cities "have engaged in a custom and policy of intentionally and consistently deceiving *the investors purchasing tax liens* at the annual sale by knowingly reporting to the Counties 'delinquent taxes' which inappropriately include some of the Cities' municipal non-tax 'special assessments' and 'special bills' as real estate taxes." Complaint ¶ 15 (emphasis added). Plaintiffs have not argued that the Defendant Cities include the demolition costs in some liens but not in others, thereby creating two classes of investors. Instead, Plaintiffs appears to argue that the Defendant Cities include demolition costs associated with properties in Lansing and Flint in *all* tax lien sales. In this way, there are not two classes. There is but one-that of the investors purchasing tax liens.

Plaintiffs Motion of Summary Judgment offers no assistance to their equal protection claim. Plaintiffs argue that "[t]he Cities, by transferring demolition costs to the County has created a class of persons who bid on properties which have the defacto demolition costs attached to them, and a class of bidders who bid on property which do not have demolition costs attached to the tax sale." Plaintiffs further assert that "[t]he taxes with demolition costs do not relate to the value of the property compared to taxes without the demolition costs," and argue that "the Cities are denying these bidders equal protection of the law to other bidders who purchase properties without demolition costs associated with the tax sale in violation of their equal protection rights."

Again, Plaintiffs have failed to produce evidence of the existence of a class of "other bidders who purchase properties without demolition costs associated with the tax sale." Plaintiffs argue that if demolition costs are associated with Flint and Lansing-area properties sold at the annual tax lien sale, it is the custom of the cities to include these costs in the amount of the tax lien. If this is so, the only "class of bidders who bid on property which do not have demolition costs attached to the tax sale" is the class of individuals who buy properties in the Flint and Lansing areas that have *no* associated demolition costs to include. This class could not be "similarly situated" for purposes of the equal protec-

tion clause. For this reason, Plaintiffs equal protection claim is dismissed.

### E. Unjust Enrichment

 Plaintiffs claim that "[t]he Defendant Cities have been unjustly enriched by taking monies which they were not entitled to." Complaint ¶ 41. Defendants respond by stating that, because unjust enrichment is an equitable remedy, Plaintiffs must demonstrate that they acted equitably. Defendants also contend that "[t]he Plaintiff did not do equity because it did nothing to protect its own interests before offering to purchase the tax liens." Defendants further contend that:

The Plaintiff's representative-an attorney-spoke of doing "due diligence," but it consisted of nothing more than reading the County's catalog to choose those properties with tax liens totaling between $1,000 and $1,5000. Had Plaintiff asked, the City of Flint could have advised it of all tax liens, including those which the Plaintiff described as "non-tax special assessments and special bills." The City's Treasurer kept that information and provided it by telephone, facsimile or in person to those who requested it. The Plaintiff never asked for that information and now complains that the City "deceived" him.

Citing to *Atlantic Municipal v. Auditor General*, 304 Mich. 616, 8 N.W.2d 659 (1943), Defendants claim that Plaintiffs failure to investigate militates in favor of summary judgment for Defendants.

In *Atlantic Municipal*, the plaintiff was, like the Plaintiff is this case, in the tax-title business. Plaintiff in that case bought property at a tax lien sale from the City of Flint. Unbeknownst to him, the State of Michigan had previously purchased tax liens for prior tax periods, making the State's lien superior to plaintiffs. Plaintiff sued to invalidate the tax lien sale, but the Michigan Supreme Court rejected his

claim, observing that plaintiff was "no novice in the business of purchasing at State tax sales." *Id.* at 620–21, 8 N.W.2d 659. The Michigan Supreme Court further recognized that:

The tax records were open to plaintiff's inspection, and it is presumed to have known of the existing State laws relating to tax sales. It is apparent that plaintiff purchased at the 1939 tax sale with open eyes, and we are satisfied that it received all that it purchased and paid for, i.e., the lien of the State for the 1936 unpaid taxes, which lien was cut off when the State's title became absolute November 3, 1939.

*Id.* at 621, 8 N.W.2d 659.

Plaintiffs respond to this argument by stating that it does not apply because it does "not pertain to the same factual situation that we have in this case and the Plaintiffs in these cases did not do anything wrong." It should be noted that plaintiff in *Atlantic Municipal* also did nothing wrong. Plaintiffs do not explain the factual differences they claim. Plaintiffs' distinction on this issue is nonexistent. However, Defendants analogy to *Atlantic Municipal* fails because Defendants cite to no law of which the Plaintiffs should know that requires the cities to keep the records they say that have.

Plaintiffs do, however, point to *Helin v. Grosse Pointe Township*, 329 Mich. 396, 45 N.W.2d 338 (1951), for the proposition that "intentional over-assessment is fraud." *Id.* at 407, 45 N.W.2d 338. In *Helin*, the Michigan Supreme Court found that the municipal taxing authority had engaged in fraud where a tax lien investor had been induced into paying more for a tax lien than the value of the underlying property. According to Plaintiffs, "[t]his is the exact same situation as the case at bar. In our case, the Cities are carrying out and engaging in fraud," leading to Plaintiffs be-

ing induced into paying more for a tax lien than the value of the underlying property.

*Helin* does not change the premise of *Atlantic Municipal. Helin* involved individual plaintiffs not learned in the business of property tax valuation. They could not be presumed to know the laws of that area. By contrast, the Plaintiffs here are experienced in the business of purchasing tax liens and, by law, are presumed to know the relevant laws.[1] *Adams Outdoor Adver. v. City of East Lansing*, 463 Mich. 17, 27 n. 7, 614 N.W.2d 634 (2000) ("People are presumed to know the law"); *American Way Service Corp. v. Commissioner of Ins., Michigan Dept. of Commerce, Ins. Bureau*, 113 Mich.App. 423, 433, 317 N.W.2d 870 ("One engaged in business in this state is presumed to know the law as it relates to the operation of that business.").

Defendants cite to *Mercantile Trust Co. v. Tennessee Cent. R. Co.*, 294 F. 483, 487 (6th Cir.1923), for the proposition that the doctrine of *caveat emptor* applies at judicial sales. The Michigan Court of Appeals has also stated that, "[u]nder Michigan law, a purchaser at a judicial sale takes the property subject to all prior defects, liens and encumbrances of which he has notice or of which he could obtain knowledge under his duty to inform himself." *Byerlein v. Shipp*, 182 Mich.App. 39, 43, 451 N.W.2d 565 (1990). Plaintiffs rely on *Helin* to refute this claim, as well, arguing that fraud negates this rule.

The above mentioned arguments notwithstanding, Plaintiffs claim fails because their premise is faulty. Contrary to Plaintiffs' assertion, the Defendant Cities have *not* been unjustly enriched by taking monies which they were not entitled to because, as explained earlier, the Defendant Cities *were* entitled to these monies.

Plaintiffs' Motion for Summary Judgment is **DENIED** and Defendants' Motion is **GRANTED** in its entirety.

## IV. CONCLUSION

This Court **GRANTS** Defendants motion for summary judgment on Plaintiffs' § 1983 procedural due process claim because alternative state court remedies exist for Plaintiffs to redress their alleged harm. This Court also **GRANTS** summary judgment in favor or Defendants on Plaintiffs' substantive due process claim because Defendants have not committed conduct "shocking to the conscience." Additionally, Plaintiff's equal protection claim is **DISMISSED** because Plaintiffs have not demonstrated the existence of two similarly situated classes which have been irrationally treated differently by Defendant Cities. Defendants' motion is also **GRANTED** with regard to Plaintiff's takings and unjust enrichment claims. Finally, Plaintiffs' state law claims are meritless, and summary judgment is **GRANTED** in favor of Defendants.

Accordingly,

**IT IS HEREBY ORDERED THAT** Defendants' Joint Motion for Dismissal and/or Summary Judgment (Docket # 20, filed October 1, 2001) is **GRANTED**.

**IT IS FURTHER ORDERED THAT** Plaintiff's Motion for Summary Judgment (Docket # 21, filed October 21, 2001) is **DENIED**.

**IT IS FURTHER ORDERED THAT** Defendants' Motion and Brief for Extension to File Response to Plaintiff's Motion for Summary Judgment (Docket # 25, filed November 15, 2001) is **GRANTED**.

---

1. Franken Investments has been incorporated "at least since 1997." Dep. of Kenneth Frantz at 4.

### JUDGMENT

This action having come before the Court and pursuant to the Memorandum and Order entered this date,

Accordingly,

Judgment in favor of Defendants and against Plaintiff is hereby entered.